**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARNELL SHARON O'CONNOR,

    Defendant - Appellant.

No. 16-3300

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:15-CR-20079-JAR-1)**
_____

David Magariel, Assistant Federal Public Defender (Melody Brannon, Federal Public Defender with him on the brief), Office of the Federal Public Defender, Kansas City, Kansas, appearing for Appellant.

Jared S. Maag, Assistant United States Attorney (Thomas E. Beall, United States Attorney, with him on the brief), Office of the United States Attorney, Topeka Kansas, appearing for Appellee.

_____

Before **BRISCOE**, **EBEL**, and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Darnell O'Connor pled guilty to violating 18 U.S.C. § 922(g)(1), which bars felons from possessing firearms. The Government argued Mr. O'Connor's sentence should be enhanced under § 2K2.1(a)(4)(A) of the United States Sentencing

Guidelines ("U.S.S.G." or "the Guidelines") because he had a prior felony conviction for robbery under the Hobbs Act, 18 U.S.C. § 1951—a "crime of violence." *See* U.S.S.G. § 2K2.1(a)(4)(A). The district court agreed and sentenced Mr. O'Connor to 32 months in prison.

On appeal, Mr. O'Connor argues his prior conviction for Hobbs Act robbery is not a "crime of violence" under the Guidelines. We agree. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we vacate his sentence and remand for resentencing.

## I. **BACKGROUND**

Mr. O'Connor pled guilty to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1), without the benefit of a plea agreement. The Presentence Investigation Report ("PSR") determined Mr. O'Connor's base offense level was 20 based on U.S.S.G. § 2K2.1(a)(4)(A), which applies when a defendant's instant offense is preceded by one felony conviction for a "crime of violence."[1]

The PSR said Mr. O'Connor had sustained two felony convictions for:

(1) Aiding and abetting in the interference of commerce by means of robbery, *see* 18 U.S.C. §§ 2(a), 1951(b)(1); and

(2) Aiding and abetting in the brandishing of a firearm during and in relation to a crime of violence, *see* 18 U.S.C. §§ 2, 924(c)(1)(A)(ii).

---

[1] This Guidelines provision also applies when a defendant has a prior felony conviction for a controlled substance offense, but no such offense is at issue here.

The statute underlying his first conviction—18 U.S.C. § 1951—is known as the "Hobbs Act."[2]

Mr. O'Connor argued neither conviction triggered § 2K2.1(a)(4)(A) and that his base offense level, as prescribed by § 2K2.1(a)(6), should be 14—not 20. The Government responded that the PSR had correctly determined his base offense level. It argued his conviction for aiding and abetting a Hobbs Act robbery was a "crime of violence," but it did not address his other prior conviction for brandishing a firearm.

The district court concluded that Hobbs Act robbery was a crime of violence under § 2K2.1(a)(4)(A), and Mr. O'Connor's base offense level was thus 20. Adjusted for a three-point reduction for acceptance of responsibility, *see* U.S.S.G. §§ 3E1.1(a), (b), his total offense level was 17. Coupled with a criminal history category of III, Mr. O'Connor's Guidelines range was 30 to 37 months in prison. The court sentenced him to 32 months in prison, followed by a three-year term of supervised release. Like the Government, the court did not address his brandishing conviction.

Mr. O'Connor filed a timely notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i).

## II. DISCUSSION

We first recognize our standard of review and then address relevant legal background explaining how courts determine whether a defendant's past convictions may enhance a sentence under the Guidelines. Applying the law to Mr. O'Connor's

---

[2] The fact that Mr. O'Connor's conviction was for "aiding and abetting" a Hobbs Act robbery is immaterial to our analysis. *See* U.S.S.G. § 4B1.2 cmt. 1 (providing that a "crime of violence" includes aiding and abetting such offenses).

conviction for Hobbs Act robbery under § 1951(b)(1), we conclude it is not a qualifying "crime of violence" Guidelines offense and remand for resentencing.

## A. **Standard of Review**

"Whether a prior conviction qualifies as a 'crime of violence' under the Guidelines is a legal question that we examine de novo." *United States v. Thomas*, 643 F.3d 802, 804 (10th Cir. 2011) (quotations omitted).

## B. **Legal Background**

In this section, we discuss (1) the relevant Guidelines provisions, (2) Mr. O'Connor's prior conviction under the Hobbs Act, and (3) the categorical approach courts use to determine whether a prior conviction constitutes a predicate offense warranting an enhanced sentencing range.

### 1. **The Guidelines**

#### a. *Base offense level*

Section 2K2.1 specifies a base offense level of 20 for a felon-in-possession conviction if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). This case does not involve a controlled substance offense, so only "crime of violence" is relevant here.

#### b. *"Crime of Violence" definition*

A conviction can qualify as a "crime of violence" in two ways. First, it might be one or more of the "enumerated offenses" listed in U.S.S.G. § 4B1.2(a)(2) (the

4

"enumerated offense clause").[3] The two enumerated offenses relevant here are robbery and extortion. Although Mr. O'Connor's underlying conviction was for Hobbs Act *robbery*, we nevertheless must determine whether the conviction could fall within *any* of the enumerated offenses. *See United States v. Castillo*, 811 F.3d 342, 346 (10th Cir. 2015). Because the Government contends Hobbs Act robbery fits categorically within the enumerated offenses of robbery or extortion, we address both of these offenses below. Second, a conviction might be a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another," *see id*. at § 4B1.2(a)(1) (the "force clause" or "elements clause").[4]

The Guidelines commentary defines some of the enumerated offenses, but not all. "Robbery," for instance, is undefined. But Guidelines Amendment 798, effective August 1, 2016, defines "extortion" to mean "obtaining something of value from another by the wrongful use of (i) force, (ii) fear of physical injury, or (iii) threat of physical injury." *See* U.S.S.G. Supp. to App. C, Amend. 798 at 131 (Nov. 1, 2016) ("Amendment 798").[5]

---

[3] The enumerated offenses include: murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c). U.S.S.G. § 4B1.2(a)(2).

[4] In § 4B1.2(a), the force clause is listed first and the enumerated offense clause second. Because the enumerated offense clause is the main focus here, we address it first.

[5] Mr. O'Connor was sentenced on October 4, 2016. The parties agree the 2016 Guidelines that were then in effect—including Amendment 798—

We refer to this as "Guidelines extortion" to distinguish it from the "generic extortion" definition courts used before Amendment 798.

2. **The Hobbs Act**

The Hobbs Act provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by *robbery or extortion* or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a) (emphasis added). One can thus violate the Hobbs Act by committing either robbery *or* extortion. *Id.*

Mr. O'Connor was convicted of Hobbs Act robbery, not Hobbs Act extortion. The Hobbs Act defines "robbery" as:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his *person or property*, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

*Id.* § 1951(b)(1) (emphasis added). One can thus commit Hobbs Act robbery by means of actual or threatened force to another's person *or* property. *Id.*

3. **The Categorical Approach**

We must apply the "categorical approach" to decide whether Mr. O'Connor's prior conviction for Hobbs Act robbery is a "crime of violence" under the Guidelines

---

must govern. *See* U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

6

and therefore qualifies him for an enhanced sentence. *See United States v. Titties*, 852 F.3d 1257, 1265 (10th Cir. 2017). To determine whether a prior conviction is categorically a "crime of violence," the "formal categorical approach" looks to the elements of the statute of conviction "and not to the particular facts underlying [that conviction]." *Taylor v. United States*, 495 U.S. 575, 600 (1990). We must compare the scope of conduct covered by the elements of the crime—here, Hobbs Act robbery—with § 4B1.2(a)'s definition of "crime of violence."

If some conduct that would be a crime under the statute would not be a "crime of violence" under § 4B1.2(a), then any conviction under that statute will not qualify as a "crime of violence" for a sentence enhancement under the Guidelines, regardless of whether the conduct that led to a defendant's prior conviction was in fact violent. As the Supreme Court said in *Descamps*, "[I]f the statute sweeps more broadly" than the § 4B1.2(a) definition—that is, if some conduct would garner a conviction but would not satisfy the "crime of violence" definition—then any "conviction under that law cannot count as a ['crime of violence'] predicate." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *see id.* at 2283. In short, "a prior crime would qualify as a predicate offense in all cases or in none." *Id.* at 2287.

Accordingly, if conduct that would be a Hobbs Act robbery is not a "crime of violence" under § 4B1.2(a)'s enumerated or force clauses, then Hobbs Act robbery is not a "crime of violence" under the Guidelines. This is so even when the defendant's actual conduct leading to the underlying Hobbs Act robbery conviction would satisfy the § 4B1.2(a) definitions. "[T]he mismatch of elements saves the defendant from an

7

[enhanced] sentence," *Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016), because "[t]he key . . . is elements, not facts," *Descamps*, 133 S. Ct. at 2283.

a. *Enumerated clause*

Applying the categorical approach to the enumerated offense clause, we compare the elements of the defendant's crime of conviction—here, Hobbs Act robbery—with the elements of any potentially applicable § 4B1.2(a)(2) enumerated offenses—here, robbery and extortion—to see if they match. *See*, *Mathis,* 136 S. Ct. at 2248-49; *Titties*, 852 F.3d at 1265.[6] If the Guidelines do not supply a definition of the enumerated offense, as here with robbery, we must determine its generic definition by considering "a wide range of sources . . . , including federal and state statutes, the Model Penal Code, dictionaries, and treatises." *United States v. Rivera-Oros*, 590 F.3d 1123, 1126-27 (10th Cir. 2009). If the scope of conduct covered by the elements of Hobbs Act robbery—not the facts underlying Mr. O'Connor's prior conviction—is broader than what the enumerated offense definition would cover, the "crime of violence" sentencing enhancement is not valid under that clause. *See Titties*, 852 F.3d at 1265-66.

b. *Force clause*

Under the force clause, we analyze whether the statute underlying the prior conviction "has as an element the use, attempted use, or threatened use of physical

---

[6] Although *Mathis* and *Titties* involved the application of enhanced sentences based on the Armed Career Criminal Act's ("ACCA") definition of "violent felony"—not the Guideline's definition of "crime of violence"—the analytical approach is the same. *See Titties*, 852 F.3d at 1265 n.8; *see also* (using categorical approach in applying Guidelines provisions).

force against the *person of another*." U.S.S.G. § 4B1.2(a)(1) (emphasis added); *see*

*United States v. Wright*, 957 F.2d 520, 521 (8th Cir. 1992). If the statute criminalizes

only conduct that fits within the force clause, then a sentencing enhancement is valid.

*See United States v. Taylor*, 843 F.3d 1215, 1220 (10th Cir. 2016) (applying the

categorical approach to determine whether a prior conviction fit within the force

clause and thus warranted a sentencing enhancement). But if the Hobbs Act robbery

statute covers conduct that falls outside the force clause—such as threatening

property rather than "the person of another"—then Hobbs Act robbery is not

categorically a crime of violence under that clause.

    c. *Modified categorical approach*

The categorical approach framework is relatively straightforward when a

statute contains one set of elements to define a single crime. Some statutes, however,

list elements in the alternative, thereby defining multiple crimes. *Mathis*, 136 S. Ct.

at 2249. These statutes are often referred to as "divisible" statutes. *Id*. The Hobbs

Act, for example, is a divisible statute setting out two separate crimes—Hobbs Act

robbery and Hobbs Act extortion. *See United States v. Gooch*, 850 F.3d 285, 291

(6th Cir. 2017).

When faced with a divisible statute, courts must first determine which of the

alternative elements formed the basis for the defendant's conviction. This

determination employs the "modified categorical approach," which permits a

sentencing court to examine a limited class of documents to determine "what crime,

with what elements, a defendant was convicted of." *Mathis,* 136 S. Ct. at 2249. We

need not perform that examination here because the parties agree Mr. O'Connor's

prior conviction was for Hobbs Act robbery. *See Gooch*, 850 F.3d at 291.

4. *United States v. Castillo*

Our analysis below points out the similarities and differences between this

case and *United States v. Castillo*, 811 F.3d 342 (10th Cir. 2015). The issue in

*Castillo* was whether California's robbery statute—which, like Hobbs Act robbery,

can be violated by threatening injury to a person *or* property, *see* Cal. Penal Code

§§ 211-12—was categorically a crime of violence under the Guidelines. 811 F.3d at

345.[7] We held that section 211 is categorically a crime of violence under the

enumerated offense clause in § 2L1.2, relying on the combination of two offenses—

generic robbery and generic extortion. We recognized that "a violation of section

211 achieved through threats to a *person* meets the generic robbery definition, while

a violation of section 211 based on a threat to *property* corresponds to generic

extortion." *Id*. at 347 (emphases added).

The Guidelines were amended in 2016 to include a definition of extortion that

is narrower than the generic definition we used in *Castillo*. We address the effect of

Amendment 798 below.

C. **Analysis**

---

[7] *Castillo* involved an enhanced sentence under U.S.S.G. § 2L1.2—a different Guidelines provision than the one at issue here but one with a similar crime of violence definition.

We now address whether Mr. O'Connor's prior conviction for Hobbs Act robbery is categorically a crime of violence under the Guidelines. Under the § 4B1.2(a)(2) enumerated offense clause, we conduct the categorical approach analysis by comparing the prior offense with the relevant enumerated offense. *See Titties*, 852 F.3d at 1266-67. Here, the Government contends Hobbs Act robbery falls within the definition of either generic robbery or Guidelines extortion, so we address both. If the basic elements of Hobbs Act robbery—i.e., the minimum conduct necessary for a conviction—are broader than the enumerated offenses, the crime is not categorically a crime of violence under the enumerated offense clause.

We then conduct a similar analysis with respect to the § 4B1.2(a)(1) force clause. If the basic elements of Hobbs Act robbery do not necessarily include the use or threatened use of force "against [a] person," U.S.S.G. § 4B1.2(a)(1), the crime is not categorically a crime of violence under the force clause.

1. **Enumerated Clause**

Our enumerated clause analysis starts with defining Hobbs Act robbery. We next define generic robbery, and then compare the two terms to determine whether the minimum conduct needed to constitute Hobbs Act robbery fits within generic robbery. We next conduct a similar analysis, comparing Hobbs Act robbery and Guidelines extortion.

In both instances, we conclude that because Hobbs Act robbery includes threats to property, it is broader than both generic robbery and Guidelines extortion,

11

which are limited to threats to a person. Hobbs Act robbery is therefore not categorically a crime of violence under the enumerated offense clause.

a. *Enumerated Offense Clause—Robbery*

i. Hobbs Act robbery

Hobbs Act robbery is the unlawful taking of someone's personal property against his will by use or threat of force "to his person *or property*." 18 U.S.C. § 1951(b)(1) (emphasis added). The parties disagree about the scope of that phrase. Mr. O'Connor contends that one can commit Hobbs Act robbery by threatening property alone. The Government contends that Hobbs Act robbery always involves a threat to a person and cannot be committed by threatening property alone. This is so because a threat to property inherently threatens a person. Because Hobbs Act robbery involves overcoming a person's will, the Government argues there must always be a person on the receiving end of a threat to property. We agree with Mr. O'Connor.

Hobbs Act robbery occurs only when one takes another's property against that person's will and by means of actual or threatened force. But it occurs regardless of whether the victim's will is overcome by force directed "*to* a person *or* property." *See* 18 U.S.C. § 1951(b)(1) (emphases added).

At oral argument, the Government's counsel was asked about a scenario where a person says to another, "If you don't give me $1 million, I won't hurt you, but I'll blow up an empty building you own." The offender is attempting to overcome the victim's will by threatening the victim's property, not physical injury to the victim.

12

The Government contends this scenario describes classic extortion and would be charged as such. *See* Oral Argument at 33:07-22. Even so, such conduct also satisfies the basic elements of Hobbs Act robbery, which is our inquiry under the categorical approach.

The Government reminds us that the categorical approach must focus on the "minimum conduct" criminalized by the underlying statute without applying "legal imagination" to consider hypothetical situations that technically violate the law but have no "realistic probability" of falling within its application. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quotations omitted).[8] It contends Mr. O'Connor "failed to demonstrate that the government has or would prosecute" threats to property as a Hobbs Act robbery. Aplee. Br. at 5. But he does not have to make that showing.

Hobbs Act robbery reaches conduct directed at "property" because the statute specifically says so. *See* 18 U.S.C. § 1951(b)(1). We cannot ignore the statutory text and construct a narrower statute than the plain language supports. We rejected a similar argument from the government in *Titties*, relying on the Supreme Court's reasoning in *Mathis*. We said:

> The [*Mathis*] Court did not apply—or even mention—the "realistic probability" test. It found (1) the statute at issue listed alternative means and (2) some of those means did not satisfy the . . . generic burglary definition. 136 S. Ct. at 2250. The Court concluded, "Under

---

[8] *Moncrieffe* and the case it relied on, *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), arose in the immigration context, but we have applied the "realistic probability" test in Guidelines cases. *See, e.g.*, *Rivera-Oros*, 590 F.3d at 1123.

13

our precedents, that undisputed disparity resolves this case." *Id.* at 2251. *The Court did not seek or require instances of actual prosecutions for the means that did not satisfy the ACCA.* The disparity between the statute and the ACCA was enough.

*See Titties*, 852 F.3d at 1275 (emphasis added).[9]

In sum, we conclude Hobbs Act robbery encompasses force or threat of force to property.

### ii. Generic robbery

Mr. O'Connor argues generic robbery is limited to the use or threat of force against a person, and thus a robbery statute that punishes the use or threat of force against *property* exceeds the generic robbery definition. We agree.[10]

We strongly suggested that generic robbery is limited to threats against a person in *Castillo*, although our holding did not rely on it. *See* 811 F.3d at 347.[11]

---

[9] Persuasive case law from our sibling circuits supports this conclusion. *See Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1072 (11th Cir. 2013) ("The statute's language [itself] . . . creates the 'realistic probability' that [the state] will punish crimes that do qualify as theft offenses and crimes that do not."); *Jean–Louis v. Att'y Gen.*, 582 F.3d 462, 481 (3d Cir. 2009) ("[N]o application of 'legal imagination' to the Pennsylvania simple assault statute is necessary. The elements of [the crime] are clear . . . ."); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) ("Where . . . a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text." (citation omitted)).

[10] The Government appears to agree, too. At oral argument, it did not dispute Mr. O'Connor's definition of generic robbery, limiting its argument to the scope of Hobbs Act robbery. *See* Oral Argument at 23:15-17.

[11] In *Castillo*, we held that California robbery was categorically a crime of violence under the enumerated clause. 811 F.3d at 347. When committed by threats

14

Other circuits have held that generic robbery is limited to threats against a person. *See United States v. Becerril-Lopez*, 541 F.3d 881, 891 (9th Cir. 2008) (holding that the California robbery statute, § 211, "is broader than generic robbery . . . because it encompasses mere threats to property, such as 'Give me $10 or I'll key your car'") (citations omitted); *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 381 (5th Cir. 2006) ("[T]he elements of the Texas [robbery] statute substantially correspond to the basic elements of the generic offense, in that they both involve theft and immediate danger to a person."), *abrogated on other grounds by United States v. Rodriguez*, 711 F.3d 541, 554-55 (5th Cir. 2013).[12]

Further, a significant majority of states have determined that robbery requires property to be taken from a person under circumstances involving danger or threat of potential injury *to the person*. *See United States v. Lockley*, 632 F.3d 1238, 1243 (11th Cir. 2011); *see also Santiesteban-Hernandez*, 469 F.3d at 380 & nn.5, 6 (collecting statutes and determining that a substantial majority of states have adopted

to a *person*, it constituted generic robbery. *Id.* When committed by threats to property it constituted generic extortion. *Id.* Because California robbery committed by threats to property fell within generic extortion, we ultimately did not need to decide whether it would also fall within generic robbery.

*Castillo* does not control here, however, because the Guidelines were later amended to provide a definition of extortion that replaced—and narrowed—the generic definition we relied upon in that case. We must therefore consider whether Hobbs Act robbery meets the new Guidelines definition of extortion, and we do so in the next section. The point here is that *Castillo* strongly suggests—but did not decide—that generic robbery covers threats to a person and not to property.

[12] *See also United States v. Lockley*, 632 F.3d 1238, 1244 (11th Cir. 2011) (relying on *Santiesteban-Hernandez* for the generic view); *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010) (same).

15

a definition of robbery that includes either use of force or threats of imminent force against a person).

Secondary sources provide additional support. The Model Penal Code ("MPC"), for example, defines robbery as requiring harm to people. MPC § 222.1(1)(a)-(c); *see also id.* Explanatory Note (explaining robbery is characterized as a "serious offense because of the special elements of danger commonly associated with forcible theft from the person"). And in his criminal law treatise, Professor LaFave has explained that generic robbery involves the misappropriation of property "under circumstances involving a danger to the person . . . ." 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3 (2d ed. & Oct. 2016 update); *see also id.* at n.3 (stating that the "modern trend is to consider robbery as an offense against the person").

We agree with the majority view and hold that generic robbery encompasses a threat to a person but not to property alone.

### iii. Applying the categorical approach

Having established the elements and scope of Hobbs Act robbery and generic robbery, our task of comparing the two is simple. Because Hobbs Act robbery encompasses threats to property and generic robbery excludes threats that are limited to property, the minimum conduct necessary to constitute Hobbs Act robbery does not categorically fall within generic robbery.

### b. *Enumerated Offense Clause—Extortion*

#### i. Guidelines extortion

16

Concluding that Hobbs Act robbery is broader than generic robbery is not the end of our inquiry, however, because we must consider the possibility that it falls within another of the enumerated offenses—namely, extortion.[13]  Although the Government seemed to waive this point repeatedly at oral argument, we nevertheless address it here to eliminate a potential alternative ground for affirming the district court.  *See United States v. Winningham*, 140 F.3d 1328, 1332 (10th Cir. 1998) ("[W]e may affirm the district court on a wholly different basis so long as our decision finds support in the record.").[14]

---

[13] This was the lesson of *Castillo*, where we concluded that California robbery fell within the enumerated offense clause based not on generic robbery but on generic extortion.  *Castillo*, 811 F.3d at 346.

[14] The Government contended in its appellate response brief that "Hobbs Act robbery qualifies as a 'crime of violence' under § 4B1.2, either because it meets the generic definition of robbery or because it meets the generic definition of extortion." Aplee. Br. at 16.  At oral argument, however, the Government repeatedly asserted it was relying solely on generic robbery, not extortion, for its enumerated offense clause argument:

> THE COURT: Just to be clear on what you're arguing—I have to say, your brief threw me off a bit on this because you've got a section about extortion and the generic definition and the application of it.  And if I'm understanding what you're saying this morning, none of that really matters.  What matters is that the Hobbs Act statute is divisible, you've got robbery, you've got extortion, and here we're dealing with robbery and that's all we ought to be looking at.  Have I got that right?
>
> THE GOVERNMENT: In this case, that is correct.
>
> THE COURT: I understand.  In this case.  But, you do have arguments about extortion in your brief, and I took that to mean that there's something about that that we need to consider in resolving this. But maybe you've helped us now focus attention on your position.

We need not derive a generic definition of extortion because the Guidelines provide the applicable definition in Amendment 798, effective as of August 1, 2016: "obtaining something of value from another by the wrongful use of (i) force, (ii) fear of physical injury, or (iii) threat of physical injury." Amendment 798 at 131.[15] The Sentencing Commission ("Commission") explained that Amendment 798 "narrow[ed]" the long-standing generic definition of extortion "by limiting the offense to those having an element of fear or threats of 'physical injury,' as opposed to non-violent threats such as injury to reputation." Amendment 798 at 131.[16]

---

> THE GOVERNMENT: And I apologize that was misleading. That was an attempt to try to differentiate between the issues of extortion and robbery.
>
> THE COURT: Well, that isn't what—I'm not going to argue with you about that. What's in the brief is in the brief. But I take it that . . . you're asking us to limit our focus to robbery in the Hobbs Act and compare what that covers to the generic definition of robbery. That's what the case is about?
>
> THE GOVERNMENT: Yes.

Oral Argument at 28:38-29:55.

[15] *See* U.S.S.G. § 2K2.1, cmt. n. 1 (defining "crime of violence" based on § 4B1.2(a) and its Application Note 1, which defines extortion).

[16] The relevant excerpt from the Sentencing Commission explained the new definition of extortion as follows:

> Under case law existing at the time of [Amendment 798], courts generally defined extortion as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats" based on the Supreme Court's holding in *United States v. Nardello*, 393 U.S. 286, 290 (1969) (defining "extortion" for purposes of the Hobbs Act).

18

The question here is whether this Guidelines definition of extortion—

particularly the phrase "physical injury"—includes threats to property. The

Commission did not specify either way, and we discern arguments on both sides.

Guidelines extortion can reasonably be understood to exclude threats to

property. The Guidelines contain several examples where "physical injury" is

distinguished from property damage or where the phrase clearly refers to injury to a

person. *See* U.S.S.G. § 5K2.2 (providing that an enhanced sentencing range for

"physical injury" corresponds to degree of injury that "victim suffers"); U.S.S.G. §

2C1.1(c)(3) (providing that "if the offense involved a threat of physical injury or

property destruction, [courts] apply § 2B3.2 (Extortion by Force or Threat of Injury

or Serious Damage) . . . .").[17]    Black's Law Dictionary lends further support,

defining "physical injury" as "bodily injury," which in turn is defined as "physical

---

> Consistent with the Commission's goal of focusing the career offender
> and related enhancements on the most dangerous offenders, the
> amendment narrows the generic definition of extortion by limiting the
> offense to those having an element of force or an element of fear or
> threats "of physical injury," *as opposed to non-violent threats* such as
> injury to reputation.

U.S.S.G. Supp. to App. C, Amend. 798 at 131 (2016) (emphasis and paragraph break
added).

[17] *See also* U.S.S.G. § 2J1.2(b)(1)(B) (providing that "if the offense involved
causing or threatening to cause physical injury to a person, or property damage, in
order to obstruct the administration of justice, increase by 8 levels"); U.S.S.G. §
5K2.12 (providing that "[o]rdinarily coercion will be sufficiently serious to warrant
departure only when it involves a threat of physical injury, substantial damage to
property or similar injury resulting from the unlawful action of a third party or from a
natural emergency").

damage to a person's body."  Black's Law Dictionary (10th ed. 2014).  And the one court to decide this issue sided with the narrow definition of extortion.  *See United States v. Nickles*, No. 16-cr-00356-PJH-1, 2017 WL 1398661, at \*2 (N.D. Cal. Apr. 17, 2017), *appeal filed*, No. 17-10206 (9th Cir. May 12, 2017) ("[The Guidelines] now provide[] a definition of the enumerated offense of extortion which does not include threats to property . . . .").  These factors, combined with the Commission's goal of focusing the career offender sentencing enhancements to the "most dangerous" subset of extortioners, *see* Amendment 798 at 131, suggest Guidelines extortion no longer includes threats to property.

But a reasonable case can also be made that Guidelines extortion still encompasses threats to property.  States originally enacted extortion statutes to fill gaps left by robbery statutes, which did not include "the threat . . . to destroy [a] victim's property other than his house . . . or to expose his failings or secrets or otherwise damage his good name or business reputation."  3 W. LaFave, *Substantive Criminal Law* § 20.4(a).  Because the crime of extortion was developed to provide a remedy for victims whose property was misappropriated by threats to property or reputation, the Commission's mentioning only "injury to reputation" as excluded from its new definition of extortion leaves open whether the definition covers some injury to property.  Further, the Commission has limited the scope of injury to a person in other Guidelines provisions by saying so explicitly.  The "force clause," for example, provides that a "crime of violence" has as an element the "use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. §

20

4B1.2(a)(1).  The Commission did not similarly specify this limitation in its definition of extortion.

Based on these two reasonable interpretations of Amendment 798, we find the Guidelines definition of extortion to be ambiguous.  When an ambiguity in the Guidelines is unresolvable even after "seizing everything from which aid can be derived," the rule of lenity counsels courts to interpret them to "avoid an increase in the penalty prescribed for the offense."  *United States v. Manatau*, 647 F.3d 1048, 1055 (10th Cir. 2011) (quotations omitted); *see United States v. Boyd*, 721 F.3d at 1259,1263 (10th Cir. 2013).  We thus interpret Guidelines extortion in Mr. O'Connor's favor as excluding injury and threats of injury to property.

### ii.  Applying the categorical approach

Having determined, based on lenity, that the applicable definition of extortion excludes threats to property, we compare it to Mr. O'Connor's underlying crime of conviction and conclude that Hobbs Act robbery, which can be achieved through threats to property, exceeds Guidelines extortion.

\* \* \* \*

Hobbs Act robbery can be accomplished by threats to property.  Both generic robbery and Guidelines extortion, as interpreted above, cannot—they are limited to conduct involving physical force or threats of physical force against a person.  We thus conclude that Hobbs Act robbery under § 1951(b)(1) does not categorically qualify as a crime of violence under the enumerated offense clause of the Guidelines.

2. **Force Clause**

21

The Government contends Hobbs Act robbery alternatively qualifies as a crime of violence under § 4B1.2(a)(1)'s force clause. It invokes cases—including our unpublished decision in *United States v. Moreno*, 665 F. App'x 678 (10th Cir. 2016)—holding that Hobbs Act robbery falls within a *different* force clause provided in 18 U.S.C. § 924(c)(3)(A). It would be "incongruous," the Government contends, to hold that Hobbs Act robbery constitutes a crime of violence in relation to § 924(c)(3)(A) but not U.S.S.G. § 4B1.2(a)(1)—particularly when the provisions are "virtually mirror images of one another." Aplee. Br. at 21.

But the provisions are not mirror images. The force clause under § 4B1.2(a)(1)—the clause applicable here—provides an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the *person* of another." U.S.S.G. § 4B1.2(a)(1) (emphasis added). By contrast, the force clause in § 924(c)(3)(A) includes any crime that "has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). *See United States v. Hill*, 832 F.3d 135, 144 n.13 (2d Cir. 2016) (taking note of the definitional difference).

There is nothing incongruous about holding that Hobbs Act robbery is a crime of violence for purposes of 18 U.S.C. § 924(c)(3)(A), which includes force against a person *or* property, but not for purposes of U.S.S.G. § 4B1.2(a)(1), which is limited to force against a person. *See United States v. Andino–Ortega*, 608 F.3d 305, 310–12 (5th Cir. 2010) (concluding that because two federal "crime of violence provisions,"

22

18 U.S.C. § 16(b) and § 2L1.2 of the Guidelines, defined "crime of violence" differently, the court's precedent dealing with § 16(b) was "clearly not controlling" with respect to an issue arising under § 2L1.2(b)).  Because Hobbs Act robbery criminalizes conduct involving threats to property, it does not qualify as a crime of violence under the Guidelines' force clause.

## III.  CONCLUSION

We conclude Mr. O'Connor's prior conviction for Hobbs Act robbery under § 1951(b)(1) does not qualify as a crime of violence for purposes of § 4B1.2 of the Guidelines and thus vacate his sentence and remand for resentencing in line with this opinion.[18]

---

[18] We acknowledge the possibility that Mr. O'Connor's second prior conviction for brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii) may be an alternative ground for an enhanced sentence.  Neither the district court nor the parties addressed this issue.  We express no opinion on the issue.  At resentencing, the district court can address what effect, if any, this conviction may have on Mr. O'Connor's sentencing range under the Guidelines.