FILED
United States Court of Appeals
Tenth Circuit

August 13, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JULIAN MANZANO, a/k/a Julian
Manzano, Jr., a/k/a Ju Man,

    Defendant - Appellant.

No. 23-6073

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:22-CR-00176-JD-1)**

_____

Kyle E. Wackenheim, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for
Defendant-Appellant.

Steven W. Creager, Assistant United States Attorney, Danielle M. Connolly, Assistant
United States Attorney (Robert J. Troester, United States Attorney, with them on the brief),
Office of the United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **HOLMES**, Chief Judge, and **SEYMOUR**, and **BALDOCK**, Circuit Judges.

_____

**SEYMOUR**, Circuit Judge.

_____

    Mr. Julian Manzano pled guilty to being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1). During sentencing, the district court ruled that Mr.

Manzano's prior Oklahoma conviction for second-degree murder qualified as a "crime of violence" under § 4B1.2(a)(2) of the United States Sentencing Guidelines ("U.S.S.G.") and, accordingly, applied a higher base offense level. On appeal, Mr. Manzano challenges that ruling. Because Oklahoma second-degree murder does not categorically match generic "murder" under the Guidelines, we reverse.

## I.

Just twenty-five days free after serving thirteen years in prison, on March 26, 2022, Mr. Manzano was pulled over by Oklahoma City police while driving. After approaching the vehicle, officers observed smoke and smelled the odor of burnt marijuana inside Mr. Manzano's car and they requested that he exit the vehicle. Mr. Manzano initially refused but complied when backup officers subsequently arrived. Officers searched the vehicle and discovered a .45 caliber pistol and ammunition. Mr. Manzano admitted that the pistol was his and that he had owned it for approximately four months.

Because of a prior 2009 conviction for Oklahoma second-degree murder, Mr. Manzano was indicted for, and pled guilty to, one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] In anticipation of sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") to calculate Mr. Manzano's advisory guideline range. The PSR classified Mr. Manzano's prior

---

[1] Section 922(g)(1) prohibits "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

2

Oklahoma second-degree murder conviction as a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A) and, accordingly, recommended a base offense level of 20. *See* U.S.S.G. § 2K2.1(a)(4)(A) (raising a defendant's base offense level from 12 to 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction [for] a *crime of violence*" (emphasis added)). A prior conviction is classified as a "crime of violence" under the Guidelines in one of two ways: either as (1) an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another," *see* § 4B1.2(a)(1), or (2) as "*murder*, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, [or] extortion," among other crimes, *see* § 4B1.2(a)(2) (emphasis added). Section 4B1.2(a)(1) is commonly referred to as the "elements clause," and § 4B1.2(a)(2) as the "enumerated offenses clause." *See, e.g.*, *United States v. Winder*, 926 F.3d 1251, 1253 (10th Cir. 2019); *United States v. O'Connor*, 874 F.3d 1147, 1150 (10th Cir. 2017).

Mr. Manzano objected to the PSR. He argued that Oklahoma second-degree murder does not constitute a "crime of violence" under either § 4B1.2(a)'s elements clause or enumerated offense clause and that, as such, he was entitled to a lower base offense level.[2] Of specific relevance to this appeal, Mr. Manzano argued that Oklahoma second-degree murder does not match the Guidelines' generic definition of "murder" in § 4B1.2(a)(2). At sentencing, the district court disagreed. It held that Mr. Manzano's prior conviction for

---

[2] Without the application of U.S.S.G. § 2K2.1(a)(4)(A), Mr. Manzano's advisory guideline range would have likely been reduced to 12 to 18 months' imprisonment.

Oklahoma second-degree murder qualified as generic murder and was thus a "crime of violence" under the Guidelines. It ultimately sentenced him to 27 months' imprisonment. Mr. Manzano appealed.

## II.

Mr. Manzano argues the district court erred when it found that Oklahoma second-degree murder qualified as a "crime of violence" and therefore asks us to vacate his sentence and remand for resentencing. In support, he raises two arguments. First, that Oklahoma second-degree murder does not qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a)(1) because it can be committed without "the use, attempted use, or threatened use of physical force against another." And second, that Oklahoma second-degree murder does not qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2) because it does not match this circuit's generic definition of "murder."[3] We review de novo "[w]hether a prior conviction qualifies as a crime of violence for purposes of the sentencing guidelines." *United States v. Mendez*, 924 F.3d 1122, 1124 (10th Cir. 2019).

---

[3] Mr. Manzano also raises a third argument: That Oklahoma second-degree murder independently does not qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2) because Oklahoma includes fetuses within the definition of a "person" for the purposes of second-degree murder, but the federal generic definition of "murder" does not. *See* Okla. Stat. tit. 21, § 691(B) (defining, for the purposes of Oklahoma homicide, a "human being" as including "unborn child[ren]"). This means, he argues, that Oklahoma's second-degree murder statute is broader than § 4B1.2(a)(2) and therefore a categorical mismatch. Because the government has waived any challenge to Mr. Manzano's first argument, *see infra* note 4, and because Mr. Manzano succeeds on the merits on his second argument, it is unnecessary to address this issue.

The determinative question in this case is whether Mr. Manzano's Oklahoma second-degree murder conviction categorically matches the definition of "murder" in U.S.S.G. § 4B1.2(a)(2), i.e., the enumerated offenses clause.[4] When determining whether a prior conviction qualifies as a "crime of violence" under the Guidelines (and therefore whether the higher base offense level in § 2K2.1(a)(4)(A) is applicable), we apply what is known as the "categorical approach." *See United States v. Venjohn*, 104 F.4th 179, 184 (10th Cir. 2024). This approach demands that we compare the elements of the defendant's prior criminal offense with the Guidelines' definition of a "crime of violence." *See, e.g.*, *United States v. Wilkins*, 30 F.4th 1198, 1201 (10th Cir. 2022) ("Under the categorical approach, we compare the underlying state statute to the guidelines' definition of a 'crime of violence.'"). "Crucially, we do not look to the 'underlying facts' of a specific defendant's conviction; we look only to the predicate crime's *elements*." *Venjohn*, 179 F.4th at 184. *See also O'Connor*, 874 F.3d at 1151 (noting that under the categorical approach a court "looks to the elements of the statute of conviction 'and not to the particular facts underlying that conviction'" (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)) (cleaned up)). When analyzing the enumerated offense clause specifically, "we compare the elements of the defendant's crime of conviction . . . with the elements of any potentially applicable § 4B1.2(a)(2) enumerated offenses . . . to see if they match."

---

[4] Mr. Manzano argued that his prior conviction does not qualify as a "crime of violence" under the elements clause, and the government declined to challenge or otherwise address this issue in their Answer. "[A]rguments not briefed on appeal are waived." *United States v. Almaraz*, 306 F.3d 1031, 1041 (10th Cir. 2002).

*O'Connor*, 874 F.3d at 1151. "If the scope of conduct covered by the elements of [the defendant's prior conviction] . . . is broader than what the enumerated offense definition would cover, the 'crime of violence' sentencing enhancement" in § 2K2.1(a)(4)(A) is inapplicable under that clause. *Id.* at 1151–52.[5] This is an absolutist approach. If the state statute criminalizes more conduct than is criminalized by § 4B1.2(a)'s "crime of violence" definition, then no conviction under that state statute may qualify as a "crime of violence." *See id.* at 1151. "The test is all or nothing." *United States v. Mendez*, 924 F.3d 1122, 1124 (10th Cir. 2019).

In the event the Guidelines themselves do not provide a definition of the enumerated offense, "we must determine [the offense's] generic definition by considering 'a wide range of sources . . ., including federal and state statutes, the Model Penal Code, dictionaries, and treatises.'" *O'Connor*, 874 F.3d at 1151 (quoting *United States v. Rivera-Oros*, 590 F.3d 1123, 1126–27 (10th Cir. 2009)). *See, e.g.*, *United States v. Castro-Gomez*, 792 F.3d 1216, 1217 (10th Cir. 2015) ("[A] state murder conviction categorically qualifies as a crime of violence only if the state's definition of murder corresponds with the uniform generic definition of the crime.").

---

[5] When comparing the conduct criminalized by the state statute and the conduct encompassed by § 4B1.2(a)'s "crime of violence" definition, "we look to the least of the acts criminalized by the [state] statute." *United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017). *See also O'Connor*, 874 F.3d at 1153 (comparing whether the "*minimum conduct needed* to constitute Hobbs Act robbery fits within generic robbery" (emphasis added)).

We start by defining murder under the Guidelines or, if the Guidelines do not offer a definition, by defining generic murder. We then define Oklahoma second-degree murder. Finally, we compare the two definitions to determine if Oklahoma second-degree murder criminalizes a broader swath of conduct than murder under the Guidelines. *See generally O'Connor*, 874 F.3d at 1153–55. *See also Castro-Gomez*, 792 F.3d at 1220 ("[W]e conclude the appropriate inquiry requires a court to ask whether the elements of a defendant's actual crime of conviction . . . correspond with the elements of its generic counterpart."). If Oklahoma second-degree murder criminalizes a broader swath of conduct, then the two are a categorical *mismatch* and § 2K2.1(a)(4)(A)'s sentencing enhancement will *not* apply. If it does not, then the two are a categorical *match* and § 2K2.1(a)(4)(A)'s sentencing enhancement *will* apply.

A.

One of the enumerated offenses in U.S.S.G. § 4B1.2(a)(2) that always qualifies as a "crime of violence" is "murder." § 4B1.2(a)(2). However, the Guidelines do not further define that term or identify its elements. Ordinarily that would leave us to determine the offense's "generic definition," i.e., what "murder" means according to "federal and state statutes, the Model Penal Code, dictionaries, and treatises.'" *O'Connor*, 874 F.3d at 1151 (quoting *Rivera-Oros*, 590 F.3d at 1126–27). We need not reinvent the legal wheel here, however. In *United States v. Castro-Gomez*, we adopted a portion of the Third Circuit's definition of generic murder from its decision in *United States v. Marrero*, 743 F.3d 389 (3d. Cir. 2014), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591

(2015). *See Castro-Gomez*, 792 F.3d at 1216–17 (quoting *Marrero* where we held that "[t]he generic definition of murder requires a killer's conduct to at least evince a 'reckless and depraved indifference to serious dangers posed to human life'"). The Third Circuit extensively consulted the Model Penal Code, Black's Law Dictionary, and various state laws before ultimately holding that: "[M]urder is generically defined as causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life." *Marrero*, 743 F.3d at 401.

Both Mr. Manzano and the government accept *Marrero*'s definition for the purposes of appeal, and we agree. Our sister circuit's analysis in *Marrero* was comprehensive, and so we finish the journey we began in *Castro-Gomez*. We adopt in full *Marrero*'s definition of generic murder.[6] Relevant to Mr. Manzano's case, we note that the definition of generic murder requires that, if committed during the commission of a felony, the underlying felony be "*dangerous*." *Marrero*, 743 F.3d at 401.

B.

---

[6] By doing so, we become the second circuit to adopt *Marrero*'s definition of generic murder. *See United States v. Vederoff*, 914 F.3d 1238, 1246 (9th Cir. 2019). We are unaware of any competing definitions of generic murder adopted by our other sister circuits. *See, e.g.*, *United States v. Hernandez-Morales*, 760 F. App'x 258, 260 (5th Cir. 2019) ("We have not even adopted a definition of generic murder."); *United States v. Hopskin*, 702 F. App'x 335, (6th Cir. 2017) (holding that "[g]eneric murder includes unintentional (*e.g.*, reckless) types of murder," but not adopting a full definition); *United States v. Castillo*, 896 F.3d 141, 151 (2d. Cir 2018) (offering a historical definition of murder but not adopting a generic one).

We next turn to Oklahoma's definition of second-degree murder. Oklahoma law provides:

> Homicide is murder in the second degree . . . [1] [w]hen perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual; or [2] [w]hen perpetrated by a person engaged in the commission of *any felony* other than the unlawful acts set out in Section 1, subsection B, of this act [Okla. Stat. tit 21, § 701.7, dealing with first-degree murder].

Okla. Stat. tit. 21, § 701.8 (emphasis added).

The relevant phrase is "any felony." If Oklahoma second-degree murder can be committed during the commission of *any* felony (even non-dangerous felonies), then it criminalizes a broader swath of conduct than murder as we have generically defined it (which can only be committed during the commission of *dangerous* felonies, *see Marrero*, 743 F.3d at 401). The government argues that, despite the text of § 701.8, Oklahoma caselaw confines second-degree murder to "dangerous" felonies. Mr. Manzano asserts that § 701.8 reaches beyond only "dangerous" felonies and sweeps in even non-dangerous felonies. At bottom, then, our inquiry is one of scope: What does the phrase "any felony" in § 701.8 actually mean?

We agree with Mr. Manzano and conclude that non-dangerous felonies can serve as predicate felonies for Oklahoma second-degree murder. To determine the scope of § 701.8's "any felony" language, we look to its interpretation by Oklahoma state courts,

9

specifically by the Oklahoma Court of Criminal Appeals.[7] *See Venjohn*, 104 F.4th at 185 ("[S]tate law 'defines the substantive elements of the crime of conviction.'" (quoting *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017))). *See also, e.g., Johnson v. United States (Johnson I)*, 559 U.S. 133, 138 (2010) ("We are ... bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements of [the crime of conviction].") . The foundational case to address this issue is *Wade v. State*, 581 P.2d 914 (Okla. Crim. App. 1978). There, the Oklahoma Court of Criminal Appeals held that felonies that could qualify as predicates for second-degree murder "must be [(a)] inherently or potentially dangerous to human life, [(b)] inherently dangerous as determined by the elements of the offense or [(c)] potentially dangerous in light of the facts and circumstances surrounding both the felony and the homicide." *Wade*, 581 P.2d at 916.

This language was repeated by the Court when it adopted revisions to Oklahoma's Uniform Jury Instructions. *See In re Adoption of 2012 Revisions to Okla. Unif. Jury Instructions—Crim. (Second Edition)*, 287 P.3d 990, 1009 (Okla. Crim. App. 2012). In that order, the Court wrestled with the very question facing us here: Can non-dangerous felonies constitute predicate felonies for second-degree murder? It cautioned against the overbreadth of the phrase "any felony." Such language, it warned, "raises the specter of a forger[8] being convicted of murder if he accidentally trips his victim and causes the victim

---

[7] "[T]he Oklahoma Court of Criminal Appeals [is] the highest court on criminal matters in Oklahoma." *Cummings v. Evans*, 161 F.3d 610, 615 (10th Cir. 1998).

[8] Forgery in either the first or second degree is a felony in Oklahoma. Okla. Stat. tit. 21, § 1621(A), (B).

to strike his head and suffer death." *Id.* at 1009. This concern, the Court explained, was why "[t]he restriction of the felony-murder rule to those crimes which evince some potential for peril to others" was given "explicit recognition" in *Wade*. *Id.* (citing to *Wade*, 581 P.2d at 916).

And yet, the Court was also clear that so-called "nonperilous felonies," like larceny or false pretenses, *could* qualify as predicate felonies for second-degree murder if "committed in such a way as to create a potential danger to life." *Id.* ("[T]he facts of the particular case, including the circumstances under which the felony was perpetrated, must be examined in order to determine whether even a nonperilous felony is committed in such a way as to create a potential danger to life."). It is the responsibility of Oklahoma trial judges to "examin[e] [] the circumstances in which the [felony] was committed, as well as of the [felony] itself," and then to determine whether instructing the jury on felony-murder is appropriate. *Id.*

The text of *Wade* and *In re Adoption* plainly belie the government's assertion that only dangerous felonies can constitute predicate felonies for Oklahoma second-degree murder. Both establish that "nonperilous felonies," if "*potentially* dangerous to human life" or if "committed in such a way as to create a *potential* danger to life," can serve as predicate felonies for Oklahoma second-degree murder. *Wade*, 581 P.2d at 916 (emphasis added); *In re Adoption*, 287 P.3d at 1009 (emphasis added). The "minimum conduct necessary to constitute" Oklahoma second-degree murder, then, is murder perpetrated during the commission of a *potentially*, not actually, dangerous felony. *O'Connor*, 874

11

F.3d at 1155. True, the felony at issue cannot be untethered from "dangerousness," *see In re Adoption*, 287 P.3d at 1009, but the felony need not always be "actually" or "inherently" dangerous as the government would have us believe. "Potentially dangerous" felonies will suffice. *Wade* itself is a paradigmatic example. There, Mr. Wade was convicted of second-degree murder after bringing his gun into a bar. *Wade*, 581 P.2d at 915. The "possession of a loaded pistol in an establishment where beer or alcoholic beverages are consumed" was, at that time, a felony under Oklahoma law. Okla. Stat. tit. 21, § 1272.2 (repealed 2021). On appeal, Mr. Wade argued that there was insufficient evidence to convict him of second-degree murder because his carrying a gun into the bar was not the proximate cause of the victim's death. *Id.* The Oklahoma Court of Criminal Appeals disagreed. It held that there was a sufficient "nexus between [Mr. Wade's] underlying felony and the homicide," and, moreover, that the underlying felony's "potentiality for danger to human life" was "clear." *Id.* at 916. The Court stopped short of declaring Mr. Wade's underlying felony to be *actually* dangerous; it was only *potentially* dangerous, specifically "in light of the facts and circumstances surrounding both the felony and the homicide." *Id.* That was enough.

Several other cases from the Oklahoma Court of Criminal Appeals further support our conclusion that potentially, but not necessarily inherently, dangerous felonies can be predicates for Oklahoma second-degree murder. In *Barnett v. State*, 263 P.3d 959, 970 (Okla. Crim. App. 2011), the Court affirmed the second-degree murder conviction of a defendant who had feloniously used "a vehicle to facilitate [the] intentional discharge of a firearm." In *Malaske v. State*, 89 P.3d 1116, 1117 (Okla. Crim. App. 2011), the Court

12

affirmed the second-degree murder conviction of a defendant who had feloniously furnished alcohol to a minor.[9] And in *Baker v. State*, 966 P.2d 797, 798 (Okla. Crim. App. 1998), the Court affirmed the second-degree murder conviction of a defendant when the predicate felony was a second DUI. The facts and felonies at issue in those cases affirm that potentially dangerous felonies suffice as predicates for second-degree murder under Oklahoma law.

C.

The final step in our analysis is a comparison of the elements of Oklahoma second-degree murder and the federal definition of generic murder. *See O'Connor*, 874 F.3d at 1151. Recall, the elements of Oklahoma second-degree murder and our definition of generic murder must be a "categorical match." If Oklahoma's statute criminalizes more conduct than is encompassed by our definition of generic murder, then no conviction under Oklahoma's second-degree murder statute may qualify as "murder" under the enumerated offense clause and, by extension, as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2). *See e.g., United States v. Titties*, 852 F.3d 1257, 1266 (10th Cir. 2017) ("If the [state] statute sweeps more broadly than the [Guideline] definition—that is, if some conduct would garner a conviction but would not satisfy the definition—then any conviction under

---

[9] In *Malaske*, the Court was explicit that "the crime of furnishing alcohol to a minor is a felony that is '*potentially dangerous* in light of the facts and circumstances surrounding both the felony and the homicide.'" *Malaske*, 89 P.3d at 1117 (quoting *Wade*, 581 P.2d at 916) (emphasis added).

13

that law cannot count as [a "crime of violence"]." (quoting *Descamps v. United States*, 570 U.S. 254, 261 (2013)) (cleaned up)).

Here, Oklahoma's second-degree murder statute criminalizes more conduct than is encompassed by our federal definition of generic "murder." Our circuit's definition of generic "murder" restricts predicate felonies to *dangerous* felonies, *Marrero*, 743 F.3d at 401 ("[M]urder is generically defined as causing the death of another person either intentionally, during the commission of a *dangerous felony* . . . ." (emphasis added)). The Oklahoma Court of Criminal Appeals has interpreted Oklahoma's second-degree murder statute, however, to criminalize homicide when perpetrated during the commission of *potentially* (but not necessarily actually) dangerous felonies. *Wade*, 581 P.2d at 916; *In re Adoption*, 287 P.3d at 1009. In other words, felonies that could not serve as predicates under our circuit's definition of generic "murder" could serve as predicates under Oklahoma law. "This now becomes a paradigmatic example of a categorical mismatch." *Venjohn*, 104 F.4th at 186. Oklahoma second-degree murder criminalizes a broader swath of conduct than our federal generic "murder" does. Because this is so, Oklahoma second-degree murder is a categorical mismatch with the definition of "murder" in U.S.S.G. § 4B1.2(a)(2) and therefore cannot qualify as a "crime of violence" under that Guideline.

## III.

Because Oklahoma second-degree murder is a categorial mismatch with our circuit's definition of generic murder, it was error for the district court to construe Mr. Manzano's conviction as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2) and apply its

correspondingly higher base offense level. We therefore reverse and remand for

resentencing.