**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4703

UNITED STATES OF AMERICA

Plaintiff – Appellee,

v.

RICHARD GREEN

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland at Baltimore.
Theodore D. Chuang, District Judge.  (1:16-cr-00452-TDC-1)

Argued:  January 28, 2021                      Decided:  April 29, 2021

Before KING, HARRIS, and RUSHING, Circuit Judges.

Vacated and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge King joined.  Judge Rushing wrote a separate opinion, concurring in part and concurring in the judgment

**ARGUED:**  Julie Marie Reamy, JULIE M. REAMY, ATTORNEY AT LAW, LLC, Baltimore, Maryland, for Appellant.  Charles David Austin, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

PAMELA HARRIS, Circuit Judge:

Richard Green was sentenced as a career offender under § 4B1.1 of the United States Sentencing Guidelines, after the district court found that Hobbs Act robbery, of which Green was convicted, qualified as a crime of violence under that provision. This court has not yet considered whether Hobbs Act robbery constitutes a crime of violence under the Guidelines, but all five federal courts of appeals to do so have concluded that it does not. Because we agree with our sister circuits, we vacate Green's sentence and remand for resentencing.

## I.

Richard Green pled guilty to a single count of interference with commerce by robbery – so-called Hobbs Act robbery – in violation of 18 U.S.C. § 1951. In their plea agreement, the parties stipulated to a sentence of no less than 120 months' imprisonment. Green's presentence report ("PSR") designated Green as a career offender under § 4B1.1 of the Sentencing Guidelines, treating his Hobbs Act robbery conviction as a "crime of violence." *See* U.S.S.G. § 4B1.1. As a result, his Guidelines sentencing range, otherwise 77 to 96 months, became 151 to 188 months.

The only issue on appeal is whether Green's instant offense of conviction, Hobbs Act robbery, is a "crime of violence" under the Sentencing Guidelines' career offender

provision.[1]  Section 4B1.2(a) of the Sentencing Guidelines provides two alternative definitions of a "crime of violence."  First, an offense will qualify as a crime of violence under the "force clause" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id.* § 4B1.2(a)(1).  Second, an offense will qualify under the "enumerated clause" if it is among the listed offenses to be treated categorically as a crime of violence – including, as relevant here, both robbery and extortion.  *Id.* § 4B1.2(a)(2).

In his sentencing memo, Green objected to the career offender enhancement, arguing that Hobbs Act robbery "is not a crime of violence as defined by USSG § 4B1.2." J.A. 137.  Green's argument consisted of one sentence and two footnotes, in which he appeared to raise a vagueness challenge to § 4B1.2.  *See id.* (citing *United States v. Davis*, 139 S. Ct. 2319 (2019); *Johnson v. United States*, 576 U.S. 591 (2015)).  Green also cited, without additional discussion, *Quarles v. United States*, 139 S. Ct. 1872 (2019), which applied the Armed Career Criminal Act's definition of "violent felony" and construed the enumerated offense of "burglary."  *Id.*

In response, the government explained that the recent vagueness decisions cited by Green did not apply to the Sentencing Guidelines.  *See* J.A. 148; *see also Beckles v. United*

---

[1] That provision applies to a defendant who commits a qualifying crime of violence and has two prior felony convictions for crimes of violence or controlled substance offenses.  *See* U.S.S.G. § 4B1.1(a).  On appeal, Green challenges only the designation of his instant offense – Hobbs Act robbery – as a crime of violence; he does not argue here that his two prior state convictions for armed robbery would not qualify as predicate crimes of violence.

*States*, 137 S. Ct. 886 (2017). And because "robbery" is among the offenses listed in § 4B1.2(a)(2)'s enumerated clause, the government argued, Hobbs Act robbery necessarily qualifies as a crime of violence under the Sentencing Guidelines' career offender provision. J.A. 148.

At the sentencing hearing, the district court overruled Green's objection to the career offender enhancement. The court appeared to rely on § 4B1.2's force clause, rather than the enumerated clause, reasoning that the elements of Hobbs Act robbery "allow [that offense] to be treated as a predicate under the force clause." J.A. 98. The court acknowledged, however, that whether Hobbs Act robbery qualifies as a crime of violence under § 4B1.1 "has not been fully decided yet," and that it "could relook at this again if a higher court were to determine that [] Hobbs Act robbery is not a predicate offense." *Id.*

Applying the career offender enhancement, the district court adopted the Guidelines range recommended by the PSR: 151 to 188 months. That range, the court determined, was too high; even the low end of 151 months overstated the seriousness of Green's criminal history and was more than required to provide deterrence. But the parties' stipulated minimum of 120 months was too low, given the details of the crime at hand. Instead, the court imposed a term of imprisonment of 144 months (or 12 years), above the parties' agreed-upon minimum but a downward variance from the Guidelines range.

## II.

We begin with the merits of the question on appeal: whether Hobbs Act robbery is a crime of violence under § 4B1.2 of the Sentencing Guidelines. Five other federal courts

4

of appeals have considered this question and have concluded unanimously that it is not. *See United States v. O'Connor*, 874 F.3d 1147, 1158 (10th Cir. 2017); *United States v. Camp*, 903 F.3d 594, 604 (6th Cir. 2018); *United States v. Rodriguez*, 770 F. App'x 18, 21 (3d Cir. 2019); *United States v. Eason*, 953 F.3d 1184, 1195 (11th Cir. 2020); *Bridges v. United States*, --- F.3d ----, 2021 WL 1016433, at *6 (7th Cir. Mar. 17, 2021). A sixth court of appeals is in effective agreement, having determined that functionally identical state robbery statutes do not qualify as crimes of violence under § 4B1.2. *See, e.g.*, *United States v. Edling*, 895 F.3d 1153, 1157–58 (9th Cir. 2018) (Nevada robbery statute); *United States v. Bankston*, 901 F.3d 1100, 1103–04 (9th Cir. 2018) (California robbery statute). We agree with our sister circuits and now hold that Hobbs Act robbery is not a crime of violence under the Sentencing Guidelines' career offender provision.

**A.**

As the parties agree, we apply the categorical approach to determine whether Hobbs Act robbery is a crime of violence under the Guidelines, asking whether the offense matches categorically with the definition at § 4B1.2(a). *See Descamps v. United States*, 570 U.S. 254, 260–61 (2013) (citation omitted); *United States v. Simmons*, 917 F.3d 312, 316–17 (4th Cir. 2019). That means we look only to the statutory elements of the offense, not the particular facts of any case. *Simmons*, 917 F.3d at 317. If Hobbs Act robbery could be committed, consistent with the elements, "without satisfying the definition of crime of violence, then it is overbroad and not a categorical match." *Id.* (internal quotation marks omitted).

We thus start with the elements of Hobbs Act robbery. That offense is defined by statute as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, *to his person or property*, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1) (emphasis added). Critically for our purposes – as detailed below – this definition, by express terms, goes beyond the use of force or threats of force against a *person* and reaches the use of force or threats of force against *property*, as well. *See Rodriguez*, 770 F. App'x at 21 ("[T]he use or threat of force against a *person* is not required. The use or threat of force against *property* is enough."). So to the extent the Guidelines definition of "crime of violence" requires the use of force or threats of force against *persons*, there can be no categorical match. *See id.*

Anticipating where this will lead us, the government makes a threshold argument about the scope of Hobbs Act robbery: Hobbs Act robbery *cannot* be committed through the use or threat of force against property alone, the government urges, because there is no "realistic probability" that the statute would be employed in a case lacking an accompanying use or threat of force against a person. Like the other courts with occasion to address this argument, *see O'Connor*, 874 F.3d at 1153–54; *Eason*, 953 F.3d at 1190–92; *see also Camp*, 903 F.3d at 602, we disagree. In its entirety, the text of the Hobbs Act robbery definition dictates that it will apply to force or threats against property, with or without the kind of "proximity" between victim and property that might mark the offense

6

as one involving an inherently violent act against a person. *See Eason*, 953 F.3d at 1190–91. And contrary to the government's argument, where the plain statutory language is clear, it is not incumbent on Green to identify a Hobbs Act robbery prosecution involving only a threat of force against property. *See Gordon v. Barr*, 965 F.3d 252, 260 (4th Cir. 2020) (where the "plain statutory language" is clear, "the burden does not shift to the respondent to 'find a case' in which the state successfully prosecuted a defendant for the overbroad conduct"); *see also O'Connor*, 874 F.3d at 1154; *Eason*, 953 F.3d at 1191. Rather, we know that Hobbs Act robbery "reaches conduct directed at 'property' because the statute specifically says so." *O'Connor*, 874 F.3d at 1154 (citation omitted).

Accordingly, we turn next to the question of whether a robbery offense that, like Hobbs Act robbery, may be committed through force or threats of force against property as well as persons is a categorical match with any portion of the Guidelines definition of "crime of violence" set out in § 4B1.2(a). Like our sister circuits, we conclude that it is not.

**B.**

The government points us to three possible bases on which we might find Hobbs Act robbery to be a crime of violence under § 4B1.2(a): the force clause of § 4B1.2(a)(1) and the enumeration of both "robbery" and "extortion" in the enumerated clause of § 4B1.2(a)(2). We note at the outset that in other courts of appeals, the government has conceded all but the last of those arguments, forthrightly admitting that there is no categorical match between Hobbs Act robbery and either the force clause or generic "robbery" as listed in § 4B1.2(a)(2). *See Rodriguez*, 770 F. App'x at 20–21 (conceding no

7

categorical match with either force clause or generic robbery); *Camp*, 903 F.3d at 602 (conceding no match with generic robbery); *O'Connor*, 874 F.3d at 1154 n.10 (same). But the government has adopted a contrary position in our court, and we consider all three of its arguments here.

1.

We begin with the force clause of § 4B1.2(a)(1), which covers offenses that have "as an element the use, attempted use, or threatened use of physical force *against the person of another*." U.S.S.G. § 4B1.2(a)(1) (emphasis added). Hobbs Act robbery, as we have just described, may be committed by the use or threatened use of force against a "person *or property*." 18 U.S.C. § 1951(b)(1) (emphasis added). As a result, a person may be convicted of Hobbs Act robbery for conduct – use or threatened use of force against property – that is not encompassed by the force clause. Because Hobbs Act robbery sweeps more broadly than § 4B1.2(a)(1), it is not a categorical match for that provision. *See O'Connor*, 874 F.3d at 1158; *Camp*, 903 F.3d at 600; *Eason*, 953 F.3d at 1190; *Bridges*, --- F.3d at ----, 2021 WL 1016433, at *4; *see also Edling*, 895 F.3d at 1156–57 (holding that state robbery statute functionally identical to Hobbs Act robbery, criminalizing taking by force or threat of force against a "person *or property*," is broader than § 4B1.2(a)(1)'s force clause).

This categorical analysis is sufficiently straightforward that we need not belabor it here. In our court, the government makes one argument for treating Hobbs Act robbery as a categorical match for the force clause: Because this court previously has held Hobbs Act robbery to be a crime of violence under 18 U.S.C. § 924(c)'s force clause, *see United States*

*v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019), the government posits, it also must be a crime of violence under § 4B1.2(a)(1) of the Sentencing Guidelines. The government expressly conceded that argument in *Rodriguez*, 770 F. App'x at 21, and for good reason. Section 924(c) does contain a force clause, but that force clause – unlike § 4B1.2(a)(1)'s – covers use or threats of force against *property* as well as persons. *See* 18 U.S.C. § 924(c)(3)(A). When it comes to Hobbs Act robbery, that distinction makes all the difference. "There is nothing incongruous about holding that Hobbs Act robbery is a crime of violence for purposes of 18 U.S.C. § 924(c)(3)(A), which includes force against a person *or* property, but not for purposes of U.S.S.G. § 4B1.2(a)(1), which is limited to force against a person." *O'Connor*, 874 F.3d at 1158.

2.

For similar reasons, we readily conclude that there is no categorical match between Hobbs Act robbery and § 4B1.2(a)(2)'s enumeration of "robbery" as a covered offense. Because the Guidelines do not themselves define "robbery" for these purposes, we compare the elements of Hobbs Act robbery with those of "generic" robbery, or the "generally accepted contemporary meaning" of that offense. *See Taylor v. United States*, 495 U.S. 575, 596, 598 (1990). And generic robbery, we have determined, is the "misappropriation of property under circumstances involving *immediate danger to the person*." *See United States v. Gattis*, 877 F.3d 150, 156 (4th Cir. 2017) (emphasis added) (alteration omitted) (quoting 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3 (2d ed. 2003)); *see also Camp*, 903 F.3d at 601 (adopting same definition).

Like the force clause, in other words, Guidelines generic robbery requires "force or threat to persons – not property." *See Rodriguez*, 770 F. App'x at 21; *see also O'Connor*, 874 F.3d at 1155 (noting that "a significant majority of states have determined that robbery requires property to be taken from a person under circumstances involving danger or threat of potential injury *to the person*"). But Hobbs Act robbery, as we have seen, is broader, extending to the use or threat of force against property as well as persons. The result is clear enough that the government has conceded it in other cases, *see Rodriguez*, 770 F. App'x at 21: The minimum conduct required for conviction of Hobbs Act robbery – threats of force against property – is not a match for generic robbery as enumerated under § 4B1.2(a)(2). *See id.*; *O'Connor*, 874 F.3d at 1155; *Camp*, 903 F.3d at 601–02; *Eason*, 953 F.3d at 1193–94; *Bridges*, --- F.3d at ----, 2021 WL 1016433, at *5.[2]

Before our court, the government argues that notwithstanding this apparent mismatch, we should effectuate what it understands to be the intent of the Sentencing Commission to include Hobbs Act robbery within § 4B1.2(a)(2)'s enumeration of "robbery." For support, the government points to an amendment recently proposed by the Commission that would redefine Guidelines robbery to "mirror" Hobbs Act robbery. *See*

---

[2] The Sixth Circuit in *Camp* identified a second respect in which Hobbs Act robbery is broader than generic robbery: Generic robbery – under the definition adopted by the Sixth Circuit and by our court in *United States v. Gattis* – has an "immediate danger" element, *see Camp*, 903 F.3d at 601; *Gattis*, 877 F.3d at 156–57, whereas Hobbs Act robbery explicitly contemplates threats of force or injury "*immediate or future*," 18 U.S.C. § 1951(b)(1) (emphasis added). As the government conceded in *Camp*, "the lack of an immediacy requirement" for Hobbs Act robbery also "renders [that] statute broader than generic robbery." 903 F.3d at 602.

Sentencing Guidelines for United States Courts, 83 Fed. Reg. 65,400, 65,411–12 (Dec. 20, 2018). If that amendment is adopted, then future courts will revisit this issue. "For now, however, we must apply the Guidelines as we find them." *Rodriguez*, 770 F. App'x at 21; *see also Eason*, 953 F.3d at 1195 ("[W]e . . . interpret the Guidelines as they currently exist.").

3.

Finally, we consider what we take to be the government's primary argument, in that it has not been conceded already in some other court of appeals: that Hobbs Act robbery is a categorical match for "extortion" as enumerated under § 4B1.2(a)(2).[3] Unlike robbery, extortion is defined by the Guidelines themselves, so we use that definition in applying the categorical approach: Extortion under the Guidelines is "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. § 4B1.2 cmt. n.1. And because Hobbs Act robbery, once again, may be committed by threats to damage property, it can be a categorical match with Guidelines extortion only if that offense, too, encompasses threats to property. Like the other circuits to consider this question, we conclude that it does not.

The government tries to find its match in the references to "physical injury" in subsections (B) and (C) of Guidelines extortion, arguing that the terms "fear of physical

---

[3] The government did "seem[] to waive" even that final claim "repeatedly at oral argument" before the Tenth Circuit in *O'Connor*. *See* 874 F.3d at 1156 & n.14. Nevertheless, the court reached the extortion question, included in the government's briefing, to "eliminate a potential alternative ground for affirming the district court." *Id.* at 1156.

injury" and "threat of physical injury" extend to fears and threats of property damage as well as bodily injury. But as the Third Circuit explained in *Rodriguez*, that broad reading is belied by both the "ordinary meaning" of the term "physical injury" and its "consistent use in the Guidelines." 770 F. App'x at 22.

First, the "most natural reading" of "physical injury" is an injury to the person, not property. *Id.* Black's Law Dictionary, for instance, treats "physical injury" as interchangeable with "bodily injury," which in turn is defined as "[p]hysical damage to a person's body." *Physical Injury*, *Black's Law Dictionary* (11th ed. 2019); *Bodily Injury*, *Black's Law Dictionary* (11th ed. 2019); *see also, e.g.*, *Camp*, 903 F.3d at 603; *Rodriguez*, 770 F. App'x at 22; *Bridges*, --- F.3d at ----, 2021 WL 1016433, at *5. The ordinary meaning of "physical injury," that is, "requires that the 'wrongful use of force, fear, or threats be directed against the person of another, not property.'" *Camp*, 903 F.3d at 603 (quoting *Edling*, 895 F.3d at 1157). The government seeks to avoid this common-sense reading by splitting "physical" from "injury," and emphasizing that "physical" refers to "material" things like property. But whether "physical" and "injury," read separately, "might be broad enough to include property damage" is not the question. *Rodriguez*, 770 F. App'x at 22. "[W]ords do not exist in a vacuum," and "[w]e read 'physical injury' together as a phrase" – a phrase that "most naturally" means "only bodily injury to a person." *Id.* (citing *Camp*, 903 F.3d at 603; *Edling*, 895 F.3d at 1157–58).

Second, the Guidelines consistently use the phrase "physical injury" in other sections to refer to injury to a person, distinct from damage to property. *See Camp*, 903 F.3d at 603; *Rodriguez*, 770 F. App'x at 22; *Eason*, 953 F.3d at 1194; *Bridges*, --- F.3d at

12

----, 2021 WL 1016433, at \*5; *see also Edling*, 895 F.3d at 1157–58. For example, the Guidelines have one policy statement for physical injury – which directs courts to consider whether "the victim suffers a major, permanent disability," U.S.S.G. § 5K2.2 – and another for property damage, *id.* § 5K2.5. The Guidelines also explicitly distinguish physical injury and property damage within provisions, treating them as separate and distinct categories. *See, e.g.*, U.S.S.G. §§ 2C1.1(c)(3), 2J1.2(b)(1)(B), 2J1.3(b)(1), 5K2.12. And all of this matters, because we read "identical words used in different parts of the same act . . . to have the same meaning." *Rodriguez*, 770 F. App'x at 22 (internal quotation marks omitted). So when we broaden our lens to the Guidelines as a whole, it becomes even clearer that "physical injury" as used in § 4B1.2's definition of extortion refers only to injury to persons, and not to the injury or threatened injury to property encompassed by Hobbs Act robbery.[4]

\* \* \*

In sum, Hobbs Act robbery extends to a broader range of conduct – specifically, the use and threat of force against property, as well as persons – than § 4B1.2(a)(1)'s force clause or the offenses of robbery and extortion enumerated in § 4B1.2(a)(2). Accordingly,

---

[4] Green proposes that if we find the scope of Guidelines extortion ambiguous, we apply the rule of lenity, like the Tenth Circuit in *O'Connor*, to construe it as limited to threats against persons. *See* 874 F.3d at 1157–58; *see also Edling*, 895 F.3d at 1158 (applying rule of lenity in alternative). But like the Third, Sixth, and Eleventh Circuits, we find the text clear, and thus need not resort to the rule of lenity. That means we also have no occasion to consider the government's suggestion that the rule of lenity may not apply to the Sentencing Guidelines in light of the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017).

13

we, like five other circuits before us, hold that Hobbs Act robbery is not a crime of violence under the career offender provision of the Sentencing Guidelines. The district court thus erred when it applied that provision to enhance Green's Guidelines sentencing range.

## III.

Given this unbroken line of authority, the government devotes much of its brief to the standard of review, arguing that we should review for plain error only. We need not decide whether the government is correct. Even if plain error review is appropriate – and not our ordinary de novo review of a "crime of violence" determination, *see United States v. Carthorne*, 726 F.3d 503, 509 (4th Cir. 2013) – we would correct the district court's error here and vacate and remand for resentencing.

It is undisputed that Green objected to application of the Guidelines career offender enhancement before the district court, on the ground that Hobbs Act robbery is not a crime of violence for purposes of § 4B1.1. But, the government contends, Green raised only a vagueness argument, and did not argue – as we hold above – that the elements of Hobbs Act robbery fail to match the definition of "crime of violence" in § 4B1.2(a). Because that elements-based claim was not preserved before the district court, the government says, we should review it only for plain error; and because Green cannot show that the career offender enhancement affected the length of his sentence, there is no effect on "substantial rights" warranting reversal under that standard. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Olano*, 507 U.S. 725, 732 (1993).

14

We agree with the government to this extent:  Before the district court, Green's argument that Hobbs Act robbery is not a crime of violence appears to have rested on vagueness grounds alone.[5]  But that is not dispositive, because once a defendant raises a *claim* before the district court, it may make a new *argument* for that claim on appeal without triggering plain error review.  *See United States v. Robinson*, 744 F.3d 293, 300 n.6 (4th Cir. 2014) (defendant who challenged criminal history score before district court may make new argument against that score on appeal); *see also Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.").  So resolving this issue would require us to parse what may be a fine line between a new "claim" or "objection," *see In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014), on the one hand, and a new "twist" on a preserved claim, *see United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008), on the other.

We need not undertake that inquiry here, because even under the plain error standard, Green can prevail.  Assuming that Green has not properly preserved his argument before the district court, to establish plain error, he has the burden of showing:  (1) that an error was made, (2) that the error was plain, and (3) that the error affected his substantial

---

[5] We recognize that one of Green's citations – *Quarles v. United States*, 139 S. Ct. 1872 (2019) – did not address vagueness and instead considered the definition of generic "burglary" as enumerated in the Armed Career Criminal Act's definition of "violent felony."  *See* 8 U.S.C. § 924(e)(2)(B)(ii).  But Green provided only an unadorned citation; there was no discussion of *Quarles* or how it might apply to the Guidelines definition of "crime of violence."

rights. *See Carthorne*, 726 F.3d at 510 (citing *Henderson v. United States*, 568 U.S. 266, 272 (2013); *Olano*, 507 U.S. at 732–35). Even then, correction of an error is discretionary, and we will exercise that discretion only if an error "would result in a miscarriage of justice or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted); *see also Olano*, 507 U.S. at 736. That is a high standard, *see Carthorne*, 726 F.3d at 510, but Green can meet it here.

We already have established that the district court erred in treating Hobbs Act robbery as a crime of violence for purposes of the Guidelines career offender enhancement. The next question – which the government does not address – is whether that error was plain, meaning "clear" or "obvious." *See Olano*, 507 U.S. at 734. We think it was. As we explained in *Carthorne*, it is possible for a district court to commit plain error even where, as here, there is no controlling authority from the Supreme Court or Fourth Circuit. 726 F.3d at 516–17 & n.14. And this is precisely the case *Carthorne* had in mind: one in which "our sister circuits have uniformly taken a position on an issue that has never been squarely presented to this Court." *Id.* at 516 n.14 (internal quotation marks omitted). As described above, all five circuits to address the issue have held that Hobbs Act robbery is not a crime of violence under the Guidelines, and a sixth is in functional agreement. In combination with the clear import of the text of § 4B1.2, analyzed above, that is enough to establish that the error here was plain. *See United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002) (relying, in absence of controlling authority, on clear statutory text and uniform case law in three other circuits to find plain error).

16

Although our analysis does not depend on it, we note again that the government has conceded away most of its merits argument in other federal appellate courts. The ground on which the government opposed Green's objection before the district court – that Hobbs Act robbery is a categorical match for generic robbery under the enumerated clause of § 4B1.2(a)(2) – was contrary to the position the government already had taken before several circuit courts. *See O'Connor*, 874 F.3d at 1154 n.10; *Camp*, 903 F.3d at 602; *Rodriguez*, 770 F. App'x at 21. The ground on which the district court ultimately relied – that Hobbs Act robbery qualifies under § 4B1.2(a)(2)'s force clause – was contrary to the government's concession before the Third Circuit a few months earlier. *See Rodriguez*, 770 F. App'x at 21. We raise this here not to criticize the government – though it is fair to say that neither party's district court briefing did justice to the issue presented. Rather, the fact that the government itself views as meritless much of the argument for treating Hobbs Act robbery as a Guidelines crime of violence bolsters our conclusion that it was plain error to do so here.

That brings us to the third prong of the inquiry, and the government's sole argument for why we should not correct this plain error: According to the government, Green cannot show that the district court's error affected his "substantial rights." The court's improper application of the career offender enhancement raised Green's Guidelines sentencing range from 77-to-96 months' imprisonment to 151-to-188 months' imprisonment. The government contends, however, that Green cannot show any effect on his actual sentence of 144 months, because the district court made clear that it would in any event impose a

17

sentence above the correct and lower range – 77 to 96 months – when it found that the parties' stipulated 120-month minimum was inadequate. We disagree.

The Supreme Court's decision in *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016), governs our review of a Sentencing Guidelines error that has not been preserved in the district court. To satisfy the third prong of plain-error review, the defendant must show a "reasonable probability" of a different outcome – in this context, a lower sentence – absent the error. *Id.* at 1345. And, critically, in most cases, a defendant meets that standard once he establishes that the "district court mistakenly deemed applicable an incorrect, higher Guidelines range." *Id.* at 1346. Because "the Guidelines are not only the starting point" for sentencing "but also the lodestar," *id.*, when a defendant is sentenced under an incorrect Guidelines range, "the error itself can, and most often will, be sufficient to show a reasonable probability" that his sentence would have been different had the district court used the correct "framework" for sentencing, *see id.* at 1345–46. In the "ordinary case," then, the fact that the district court committed plain error in enhancing Green's Guidelines range under the career offender provision would be sufficient to show the necessary effect on substantial rights. *Id.* at 1347.

The government does not address *Molina-Martinez*, but we take its argument to be that this is not the "ordinary case" that decision envisioned. *Cf. id.* Here, the government contends, the record makes clear that under no circumstances would the district court have sentenced Green within what we now understand to be the correct and lower Guidelines range of 77 to 96 months. Instead, the district court unequivocally announced that neither the top end of that range – 96 months – nor even the 120-month minimum sentence to

18

which the parties stipulated in their plea agreement would adequately reflect the seriousness of Green's conduct and avoid unwarranted sentencing disparities. That means, the government suggests, that the district court's ultimate imposition of a 144-month sentence would have remained the same, even if the court had used the correct Guidelines range.

The problem with the government's argument is that the conclusion does not flow from the premise. We agree with the government that the district court made clear, on the record, its intention to impose a sentence of more than 120 months. *See* J.A. 114–15 (explaining that neither 96-month top of the unenhanced Guidelines range nor 120-month stipulated minimum sentence was adequate). But it does not follow that the district court necessarily would have imposed a sentence of 144 months – and not some lower number of months between 120 and 144 – had it understood that its sentence represented not a *downward* variance from the 151-to-188 month range it had incorrectly calculated but instead an *upward* variance from the actual 77-to-96 month range. To the contrary: The whole point of *Molina-Martinez* is that the Guidelines range is presumed to have the kind of anchoring effect that might well have affected the district court's selection of a sentence above 120 months.

Here, the government has presented no record evidence showing that the district court's 144-month sentence was imposed independent of its error in deeming Green a career offender and enhancing his Guidelines range accordingly. *See Molina-Martinez*, 136 S. Ct. at 1347. Instead, this is the more usual case in which the record cannot establish what sentence the district court would have imposed had it considered the correct and lower

19

Guidelines range. *Id.* If anything, the sentencing hearing suggests that the district court might impose a shorter sentence if the Guidelines range were corrected: After determining that Green qualified as a career offender, the district court noted that it "could relook" at the issue if its holding – and thus the Guidelines range it was applying – proved incorrect. J.A. 98. Under these circumstances, Green satisfies the third prong of the plain-error standard.

Finally, where a plain error in calculating the Guidelines sentencing range affects substantial rights, the fourth prong of plain error – whether an error affects the "fairness, integrity, or public reputation of judicial proceedings" – ordinarily will be satisfied, as well. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018). Although there may be cases in which "countervailing factors" make correction of a plain error inappropriate, *see id.* at 1909, the government has presented none here, nor made any other argument regarding the fourth factor, and we have identified no reason why the plain error in this case should not be corrected.

## IV.

For the reasons stated, we vacate Green's sentence and remand for proceedings consistent with this opinion.

*VACATED AND REMANDED*

RUSHING, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the majority's careful analysis and resulting conclusion that Hobbs Act robbery is not a crime of violence under the Guidelines' career-offender provision. I likewise agree that Green's sentence must be vacated under either de novo or plain-error review. I write separately to explain why the latter standard governs here.

An objection in the district court on one ground does not preserve for appeal objections on different grounds. *United States v. Massenburg*, 564 F.3d 337, 342 n.2 (4th Cir. 2009). To bypass this rule and urge de novo review of arguments not raised below, defendants frequently invoke one sentence from the Supreme Court's decision in *Yee v. City of Escondido*, 503 U.S. 519 (1992). *See Yee*, 503 U.S. at 534 ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."). Green does so here. Because he argued that Hobbs Act robbery is not a crime of violence under Section 4B1.2, he claims the right to make any appellate argument for reaching that conclusion. But as often proves true, context matters.

In *Yee*, owners of mobile-home parks claimed in state court that a rent-control ordinance effected a physical taking of their property. 503 U.S. at 525. Before the Supreme Court, the owners challenged the ordinance as a regulatory taking too. *Id.* at 532–533. The City contended that this theory was not properly before the Court, the owners having failed to assert it below. *Id.* at 534. The Court disagreed. The owners had "unquestionably raised a taking claim in the state courts." *Id.* That being so, "[t]he question whether the rent control ordinance took their property without compensation, in violation of the Fifth

Amendment's Takings Clause," was "properly before" the Court. *Id.* And "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Id.* These were "not separate *claims*," the Court reasoned, but "separate *arguments* in support of a single claim—that the ordinance effects an unconstitutional taking." *Id.* at 534–535. "Having raised a taking claim in the state courts," the owners "could have formulated any argument they liked in support of that claim [before the Supreme Court]." *Id.* at 535.

In support of its analysis—and specifically the statement relied upon by Green—the Supreme Court cited decisions addressing limits on the exercise of its certiorari jurisdiction. *Id.* at 534 (citing *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 78 n.2 (1988); *Illinois v. Gates*, 462 U.S. 213, 219–220 (1983); *Dewey v. Des Moines*, 173 U.S. 193, 197–198 (1899)). *Yee* itself fits that mold. Recognizing as much, other courts read *Yee* as articulating a rule specific to the Supreme Court that does not displace the courts of appeals' preservation requirements.[1] Taking the relevant statement in context,

---

[1] *See, e.g.*, *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1223 (10th Cir. 2017) ("The quote from *Yee* was made in the context of deciding whether the Court would consider an argument outside the scope of the grant of certiorari[]" and "had nothing to do with an appellant's raising arguments on appeal to a circuit court that were not first raised in district court."); *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 529 (6th Cir. 2014) (distinguishing *Yee* as based on "prudential limitations applicable to the Supreme Court's certiorari jurisdiction" and which "do not alter our well-settled rule that this court declines to entertain arguments not presented in the first instance to the district court" (internal quotation marks omitted)); *LeJeune G. v. Khepera Charter Sch.*, 779 Fed. App. 984, 989 n.4 (3d Cir. 2019) ("*Yee* is not a case about waiver. It considers whether to address, as part of a petition for certiorari, arguments not addressed below."); *Braun v. Medtronic Sofamor Danek, Inc.*, 719 Fed. App. 782, 790 n.3 (10th Cir. 2017) ("While the rule of *Yee* may be appropriate for practice before the Supreme Court, with its

that is a persuasive reading. That said, our Court has not scrutinized *Yee*'s rationale and whether it applies to appeals before us.

We have applied *Yee* just once in a published opinion to justify entertaining an argument not made below.[2] Our decision in *United States v. Robinson*, 744 F.3d 293 (4th Cir. 2014), involved a defendant's challenge to his Guidelines criminal-history category. The probation officer attributed four criminal-history points to Robinson: one for a marijuana possession conviction, one for another prior conviction, and two for committing the instant offense while on probation. *Robinson*, 744 F.3d at 296. Robinson's challenge to his criminal-history calculation addressed this last input. His probation (imposed for the possession conviction) lasted only one day, which he supposedly spent traveling, not selling drugs. *Id.* at 297. The district court rejected Robinson's argument. *Id.* at 297–298.

On appeal, Robinson again objected to his criminal-history calculation, but he added another angle. He also claimed that his possession conviction and sentence constituted relevant conduct for his instant drug conspiracy conviction, thereby exempting it from inclusion in his criminal-history score. *Id.* at 300. About this new argument, we remarked in a footnote—citing *Yee*—that, "[a]lthough he did not make this precise argument before

_____

unique, discretionary jurisdiction and singular role of clarifying the law—rather than review and correction of error—this court has historically understood its role more narrowly.").

[2] In our only other published opinion addressing this aspect of *Yee*, we concluded that it offered the appellants no refuge and thus deemed their argument forfeited. *In re Under Seal*, 749 F.3d 276, 287–288 (4th Cir. 2014).

the district court, Robinson did challenge his criminal history score, and thus preserved his claim." *Id.* at 300 n.6.

Compared to *Yee* and *Robinson*, Green's case differs markedly. The sole rationale Green offered the district court for not labeling Hobbs Act robbery a crime of violence rested on the purported vagueness of that term. Now, his rationale is solely that Hobbs Act robbery does not categorically match the Guidelines' definition of crime of violence. These are not "two variations of the same basic argument," as our Court has described the scenario in *Yee*. *In re Under Seal*, 749 F.3d 276, 288 (4th Cir. 2014). They are two different arguments completely. One contention finds its jurisprudential grounding in the constitutional doctrine of vagueness; the other finds it in the categorical approach to statutory interpretation. One contention deems the definition of crime of violence null and void; the other accepts it as controlling and outcome determinative. Neither *Yee* nor *Robinson* implicated similar incongruity.

Indeed, we have previously recognized that claiming a categorical mismatch between an offense and the Guidelines' definition of crime of violence "presents . . . an entirely different challenge" to a career-offender designation than does claiming the definition is unconstitutionally vague. *United States v. Furlow*, 928 F.3d 311, 315 & n.4 (4th Cir. 2019), *cert. granted, judgment vacated on other grounds*, 140 S. Ct. 2824 (2020). As such, we reviewed the new categorical-approach argument in that case for plain error. *Id.* at 322–323 (citing *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014) ("To preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal.")). The same reasoning applies here.

24

What is more, Green suggested to the district court that he accepted that Hobbs Act robbery qualified as a crime of violence within the Guidelines' definition. In his sentencing memorandum, Green said he raised his vagueness challenge "despite the fact that robbery is an enumerated offense" under that definition. J.A. 137 n.6. By doing so, Green likely disabused the district court of any notion that he thought Hobbs Act robbery swept broader than the Guidelines and "led the district court to believe exactly the opposite" of what Green now argues. *In re Under Seal*, 749 F.3d at 288.

Like the plain-error inquiry itself, whether a defendant preserved an argument for appeal turns on a case's specific facts. The facts here demonstrate that Green is not entitled to de novo review. Compared to his original theory, Green's argument on appeal rests on a different jurisprudential foundation, accepts a premise he previously rejected, and backtracks from a point he implicitly conceded. While I agree we must vacate Green's sentence even under the plain-error standard, I do not think it a close call whether that standard controls our analysis.