**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4624

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NAEEM DEONTE JONES,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:14-cr-00249-WO-2)

Argued:  March 20, 2026                          Decided:  April 14, 2026

Before NIEMEYER, THACKER, and HARRIS, Circuit Judges.

Vacated and remanded for resentencing by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Thacker and Judge Harris joined.

**ARGUED:**  Aaron Bader Wellman, CLIFFORD & HARRIS, PLLC, Greensboro, North Carolina, for Appellant.  Karla E. Painter, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina for Appellee. **ON BRIEF:** Clifton T. Barrett, United States Attorney, Julie C. Niemeier, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenboro, North Carolina; Emily K. Norris, Third-Year Law Student, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

Naeem Deonte Jones was convicted in 2014 of Hobbs Act robbery and brandishing a firearm in connection with that robbery. The district court sentenced him to 41 months' imprisonment and 3 years' supervised release on the robbery conviction and a consecutive 84 months' imprisonment and concurrent 5 years' supervised release on the firearm conviction.

Following his release from prison, Jones began almost immediately violating several conditions of his supervised release. Accordingly, the Probation Officer filed a petition for revocation, charging Jones with four violations of his conditions of supervised release, including, as relevant here, the violation of a condition requiring testing for illegal drugs.

The district court concluded, without explanation, that testing positive for illegal drugs was a Grade B violation under the Sentencing Guidelines and accordingly calculated Jones's sentencing range at 8 to 14 months' imprisonment, from which the court varied upwardly 5 months to impose a sentence of 19 months' imprisonment.

Because we conclude that a violation of the drug-testing condition was a Grade C violation, not a Grade B violation, we vacate the district court's judgment and remand for resentencing. In addition, we note that the court also imposed a revocation sentence that appears to have been greater than that permitted by 18 U.S.C. § 3583(h), and we commend that issue to the court when resentencing.

I

In 2014, Jones pleaded guilty to an indictment charging him in Count I with Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and in Count II with brandishing a firearm during and in relation to the robbery, in violation of § 924(c)(1)(A)(ii).  The district court sentenced him to a term of 41 months' imprisonment and a term of 3 years' supervised release on Count I and to a consecutive term of 84 months' imprisonment and a concurrent term of 5 years' supervised release on Count II.  His supervised release was subject to mandatory, standard, and special conditions, as set forth in the judgment.

Jones was released from prison and began serving his concurrent terms of supervised release on January 8, 2024.  Almost immediately thereafter, however, he started violating conditions of his supervised release.  During the next several months, he was arrested for reckless driving and driving while impaired; he repeatedly tested positive for illegal drugs; he violated location restrictions enforced by an ankle monitor; and he left the judicial district without permission.

On June 4, 2024, the Probation Officer filed a petition for revocation, charging Jones with four violations of the conditions of his supervised release.  In Violation 1, he was charged with violating the condition:  "You must not commit another federal, state or local crime."  The petition alleged that on March 15, 2024, Jones was arrested in Wake County, North Carolina, for felony possession of more than five counterfeit instruments, misdemeanor driving while impaired, misdemeanor reckless driving, and failure to wear a seatbelt.  In Violation 2, he was charged with violating the condition:  "The defendant shall submit to substance abuse testing, at any time, as directed by the probation officer . . . [and]

3

shall cooperatively participate in a substance abuse treatment program . . . ." The petition alleged that Jones tested positive for, or admitted to using, variously, cocaine, marijuana, amphetamines, and methamphetamine on February 2, February 14, March 26, April 5, May 9, and June 4, 2024. In Violation 3, he was charged with violating the condition: "The defendant shall abide by all conditions and terms of the location monitoring home detention for a period of 60 days." The petition alleged that on various occasions between May 9 and June 2, 2024, Jones violated his location restrictions and that on June 2, 2024, he removed his ankle monitor. Finally, in Violation 4, he was charged with violating the condition: "The defendant shall not leave the judicial district without permission of the court or probation officer." The petition alleged that Jones left the judicial district at the time he committed the traffic offenses charged in Violation 1.

In addition to filing the petition for revocation, the Probation Officer submitted a "Supplemental Report" that provided "relevant information" with respect to the petition for review. In the Supplemental Report, which appeared to function much like a presentence investigation report, the Probation Officer explained, under the heading "Policy Statements," the applicable Sentencing Guidelines range:

> The probation officer believes Mr. Jones' most serious violation is a Grade B in that the use of cocaine, methamphetamine, amphetamines, and marijuana constitutes an offense punishable by a term of imprisonment that exceeds one year. Mr. Jones' original criminal history category was Category III. Pursuant to USSG § 7B1.4(a), the range of imprisonment applicable upon revocation is 8 to 14 months, for each count.

> The Chapter 7 policy statements regarding the range of imprisonment applicable upon revocation are not binding on the Court. The Court must consider the policy statements, but may deviate from them for good reason articulated on the record.

4

At the revocation hearing, the district court read each of the four charges to Jones, and Jones admitted to some or all of the conduct alleged in each charge. As relevant to Violation 2, the only violation at issue in this appeal, Jones admitted all the conduct alleged, as follows:

> The Court: Second, the defendant was under a condition that he submit to substance abuse testing at any time as directed by the probation officer and the defendant shall cooperatively participate in substance abuse [treatment]. The petition alleges that Mr. Jones tested positive for controlled substances on six occasions, including positive tests for: Cocaine; cocaine, marijuana, and alcohol; and positive for . . . methamphetamine, amphetamine, cocaine, and marijuana. Does he admit or deny?
>
> Counsel: He admits, Your Honor.

During the hearing, the court also dismissed the portion of Violation 1 charging Jones with felony possession of counterfeit instruments, because the State had dropped that charge.

After accepting Jones's admissions of violations, the district court turned to explain its calculation of the Sentencing Guidelines range. The court stated:

> So the calculation here is that the most serious violation [addressing the failed drug tests] is a Grade B violation. As to Count One, the statutory maximum is 24 months. As to Count Two, the statutory maximum is 60 months. Guideline range is 8 to 14 months.

Upon finding the Guidelines range to be 8 to 14 months' imprisonment for a Grade B violation, the court explained that it was imposing a variance, as follows:

> And so I find that a sentence would otherwise start at 14 months, but a variance upward for five months to reflect the fact that at this point in time nothing has seemed to get Mr. Jones's attention is necessary. So I'm varying upward to a sentence of 19 months. I'm going to impose that sentence as to Count One. I am reimposing supervised release as to both Counts One and Two.

5

The court then formally revoked Jones's supervised release on both Counts I and II and imposed the sentence. As to Count I, it sentenced Jones to 19 months' imprisonment and 3 years' supervised release, and as to Count II, it sentenced Jones to 1 month of imprisonment and 5 years' supervised release, all to run concurrently. And in its written judgment, the court reiterated its finding as to Violation 2, "The Defendant tested positive for illicit substances on six occasions between February 2, 2024, and June 6, 2024."

From the district court's judgment dated November 7, 2024, Jones filed this appeal.

## II

For his only issue on appeal, Jones contends that the district court erred in finding that Violation 2 was a Grade B violation because the petition for revocation charged him with conduct that supported only a finding of a Grade C violation. Thus, he argues, the court should have applied a lower Sentencing Guidelines sentencing range in determining his sentence.

The Sentencing Guidelines Manual defines a Grade B violation as one involving conduct that constitutes a "federal, state, or local offense punishable by a term of imprisonment *exceeding one year*." U.S.S.G. § 7B1.1(a)(2) (emphasis added). And it defines a Grade C violation as one involving conduct that "constitute[s] (A) a federal, state or local offense punishable by a term of imprisonment of *one year or less*; or (B) *a violation of any other condition of supervision*." *Id.* § 7B1.1(a)(3) (emphasis added).

Jones argues that testing positive for illicit drugs, which the court found to be a Grade B violation, only violated a condition of supervised release and did not constitute a

felony so as to qualify as a Grade B violation.  Therefore, it was only a Grade C violation, and the district court erred in imposing a Grade B sentence.  Indeed, Jones emphasizes that after the district court had dismissed the charge of felony possession of more than five counterfeit instruments in Violation 1, there was *no charge* in the petition for revocation that alleged a Grade B violation.

We agree with Jones.

Since Jones did not present this argument or make an objection before the district court, we must conduct our review under the plain-error standard set forth in Federal Rule of Criminal Procedure 52(b), which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  To prevail on plain-error review, Jones must establish: "(1) that an error was made, (2) that the error was plain, and (3) that the error affected his substantial rights." *United States v. Green*, 996 F.3d 176, 185 (4th Cir. 2021); *see also United States v. Olano*, 507 U.S. 725, 732–35 (1993).  If he meets this burden, we may then exercise our discretion to correct the error, but "only if [the] error 'would result in a miscarriage of justice or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Green*, 996 F.3d at 185 (quoting *United States v. Carthorne*, 726 F.3d 503, 510 (4th Cir. 2013)).

We conclude first that the district court's characterization of Violation 2 as a Grade B violation was plain error.  Of the four violations with which Jones was charged, only Violation 1 alleged conduct constituting a federal, state, or local offense at all, and the conduct alleged there — after the district court dismissed the portion charging possession of counterfeit instruments — amounted to only misdemeanor offenses punishable by one

7

year's imprisonment or less. The other three violations charged only violations of Jones's conditions of supervised release, including failing drug tests, violating location restrictions, and leaving the judicial district. Accordingly, the most serious violation left in the petition for revocation, which is the violation the court had to consider for sentencing, was a Grade C violation. *See* U.S.S.G. § 7B1.1(b) (providing that when multiple violations are charged, the grade of violation is determined by the most serious violation).

The district court considered Violation 2 to be the most serious and characterized it as a Grade B violation. But the condition violated provided that "[t]he defendant shall submit to substance abuse testing, at any time, as directed by the probation officer," and "shall cooperatively participate in a substance abuse treatment program," and the petition for revocation charged that Jones violated it by testing positive for illegal drugs on six separate occasions. Violation 2 thus did not charge an offense punishable by a sentence exceeding one year; it only charged a violation of the stated condition of supervised release and therefore was a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3). Moreover, the district court proceeded throughout the revocation hearing with the fact that Violation 2 charged only a violation of the drug-test condition, not the commission of a felony offense. The court read the stated charge in Violation 2 to Jones as follows and then asked whether Jones admitted it:

> Second, the defendant was *under a condition* that he submit to substance abuse testing at any time as directed by the probation officer and the defendant shall cooperatively participate in substance abuse [treatment]. The petition alleges that Mr. Jones *tested positive* for controlled substances on six occasions, including positive tests for: [numerous illegal drugs and alcohol].

8

(Emphasis added). No one now disputes that this charge was a Grade C violation under U.S.S.G. § 7B1.1(a)(3), and Jones admitted to that charge as read.

Adjudicating the violations as charged in the petition for revocation and announced to Jones is required not only to comply with Federal Rule of Criminal Procedure 32.1 and applicable statutes for adjudicating a revocation charge — including giving Jones written notice *of the charges*, conducting a hearing on *those charges*, and making findings on whether *those charges* have been proved, *see* Fed. R. Crim. P. 32.1(b), (d); 18 U.S.C. § 3583(e)(3) — but such compliance is also necessary to protect Jones from sanctions for more serious yet uncharged violations.

Yet, when it came time to sentence Jones, including calculating his Sentencing Guidelines range, the district court, without explanation, simply characterized Violation 2 as a Grade B violation, which, when combined with Jones's Criminal History Category, carried a higher sentencing range of 8 to 14 months' imprisonment, as compared to 5 to 11 months' imprisonment for a Grade C violation. *See* U.S.S.G. § 7B1.4(a). The court then used this mistaken range to compute its upward variant revocation sentence on Count I of 19 months' imprisonment. This error was plain.

The government argues, nonetheless, that sentencing Jones for a Grade B violation was appropriate in this case because illegal drug use "can be inferred" from the failed drug tests. It also notes that this inference is supported by the Probation Officer's Supplemental Report, which stated, for the purpose of calculating the Guidelines sentencing range, that Jones's "use of" the illegal drugs was a Grade B violation.

9

First, while illegal drug use or possession may possibly be inferred from failed drug tests, *see United States v. Hunnell*, 794 F. App'x 325, 326 (4th Cir. 2020) (per curiam) (citing *United States v. Clark*, 30 F.3d 23, 25 (4th Cir. 1994) and *United States v. Battle*, 993 F.2d 49, 50 (4th Cir. 1993)), the issue is not whether the inference is possible; it is whether the record shows that the district court made that inference. We conclude that the record does not show that the district court made the inference. To the contrary, the record shows that the district court understood that Violation 2 charged Jones with only a violation of his supervised release conditions, not the commission of a new drug offense. And it proceeded with that understanding consistently. When the court presented the charges to Jones, it referred only to the failed drug tests; when it made factual findings of the violation, it again referred only to the failed drug tests; and in its written judgment, it repeated its finding that Jones had failed drug tests on six occasions. There was no ambiguity as to the charge that the court was adjudicating, and it was that charge that the court unambiguously addressed, as confirmed in its written judgment. Moreover, there was no discussion during the revocation hearing about illegal drug use or possession.

To be sure, as the government points out, the Probation Officer characterized Violation 2 in her Supplemental Report as the "most serious violation . . . in that *the use* of [illegal drugs] constitutes an offense punishable by a term of imprisonment *that exceeds one year*." (Emphasis added). But obviously, that characterization was a mistake, on which the court may have unfortunately relied in classifying the offense as a Grade B violation. Yet, at the same time that the Probation Officer prepared the Supplemental Report, she also prepared the petition for revocation, which charged only that "Mr. Jones

10

tested positive for illicit substances on six occasions during the term of supervised release." The petition for revocation made no reference to illegal drug use or possession, nor did it allege that Jones had committed a federal, state, or local offense by illegally using or possessing controlled substances. That the petition did not charge Jones with illegal use or possession is made even more clear by the fact that the petition *did* charge Jones with having violated his condition not to commit a new legal offense but so charged only *as alleged in Violation 1* (charging possession of counterfeit instruments and traffic misdemeanors). Also, the petition *did not* charge Jones with violating a separate condition to "not unlawfully possess a controlled substance" and "refrain from any unlawful use of a controlled substance."

The Supplemental Report, which functioned much like a presentence report, had no legal force to alter the petition for revocation, which must stand on its own language and, indeed, was enforced by the district court on its own language. The Supplemental Report simply mischaracterized the petition for whatever reason, and that mischaracterization cannot serve to justify a sentence that erroneously punished Jones for conduct that was not alleged in the petition for revocation.

Finally, we conclude that Jones's sentence was not only the result of plain error but also that it affected his substantial rights. *See United States v. Nelson*, 37 F.4th 962, 969–70 (4th Cir. 2022); *United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002). Moreover, we conclude that this plain error affected the fairness and reputation of the proceeding and the sentence itself. It can hardly be considered fair to present a defendant with both written and oral versions of charges alleging that he committed a Grade C

11

violation, to accept his admission to that violation, and then to sentence him, without notice or explanation, to a more severe Grade B violation.  Every schoolyard child would condemn as unfair such a quick, unexplained maneuver to change the rules of the game.

Because of this sentencing error, we conclude that the defendant must be resentenced, applying the proper calculation for a Grade C violation.

### III

During oral argument, we also inquired of counsel on our own initiative whether the sentence imposed by the district court exceeded the statutory maximum imposed by 18 U.S.C. § 3583(h).  Counsel for both parties seemed to agree that it did.  Section 3583(h) provides that when sentencing a defendant on a revocation, if the court chooses to impose a term of supervised release, that term "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." It would appear that the sentence imposed here violated this provision.

As to Count I, Jones was sentenced on revocation to 19 months' imprisonment plus 3 years of supervised release, and as to Count II, he was sentenced to 1 month of imprisonment, followed by 5 years of supervised release.  Count I carried 3 years as the maximum period of supervised release that could have been imposed, and Count II carried 5 years as the maximum.  *See* 18 U.S.C. §§ 3583(b), 3559(a).

Thus, when making the calculation prescribed by § 3583(h), it would appear that as to Count I, the maximum term of supervised release that the district court could have

12

imposed was 36 months less 19 months' imprisonment, yielding a maximum term of 17 months' supervised release, and as to Count II, the maximum term of supervised release would be 60 months less 1 month of imprisonment, yielding a maximum term of 59 months' supervised release. And if the sentences for Counts I and II were aggregated, the 60-month term of supervised release less the 19 months of imprisonment (as the 1-month term was to be served concurrently) would yield a maximum term of 41 months' supervised release. In either instance, it would appear that the 36-month term of supervised release imposed by the district court on Count I and the 60-month term on Count II — or the aggregate 60-month term — exceeded the statutory maximum.

But we did not give counsel the opportunity to brief this issue, and we therefore commit it in the first instance to the district court for consideration on remand.

\*     \*     \*

For the reasons given, the judgment of the district court is vacated and the case is remanded for resentencing in accordance with this opinion.

IT IS SO ORDERED.

13